412 P.2d 840

Vernah S. MOYSTON, d/b/a Hobbs Gas Company, Petitioner-Appellant and Cross-Appellee,

v.

NEW MEXICO PUBLIC SERVICE COMMISSION, Respondent-Appellee and Cross-Appellant.

No. 7549.

Supreme Court of New Mexico.

April 4, 1966.

Rose & Johnson, Neal & Neal, Hobbs, for appellant.

Earl E. Hartley, Atty. Gen., Frederick G. Von Huben, John Jennings, Sp. Asst. Attys. Gen., Santa Fe, for appellee.

C. Fincher Neal, Carlsbad, A. J. G. Priest, Charlottesville, Va., amici curiae.

CHAVEZ, Justice.

This is an appeal from a judgment entered by the district court of Lea County, New Mexico, which reviewed a final order of the New Mexico Public Service Commission. The Commission considered an application by Hobbs Gas Company, a sole proprietorship owned by Vernah S. Moyston. The Commission's final order determined that the rate schedules filed by petitioner, Hobbs Gas Company, were excessive and directed petitioner to file new rate

schedules designed to produce the revenues found by the Commission to be just and reasonable.

Hobbs Gas Company sought review of the Commission's final order in the district court for Lea County, and the district court upheld the final order of the Commission on all issues but one. However, since the district court found that the final order of the Commission was in error, because of the failure to include in the reproduction cost valuation of the utility plant the sum of $587,559, being the reproduction cost value of the $448,746 held by the district court to have been properly excluded from the original cost valuation of Hobbs Gas Company's property, the district court concluded that the final order of the Commission was unreasonable and unlawful and entered a judgment annulling and vacating the final order of the Commission, pursuant to the mandate of § 68–9–5, N.M.S.A., 1953 Comp. The cause is now before this court on the respective appeal and cross-appeal of the parties.

Hobbs Gas Company, hereinafter referred to as the "Company," contends that the trial court erred by disallowing a portion of the original cost of the property in determining the fair value thereof, and in respect to the denial by the court of any allowance of income taxes in establishing the rate of return to be allowed to the Company.

We first consider a preliminary question raised by the Commission. The Commission argues that it is the appellant here and that we may consider only its presentation of the facts. Supreme Court Rule 15(2) (3). The Commission bases its argument on the premise that the Company was not a party aggrieved by the trial court's decision, because the trial court annulled and vacated the Commission's order, and that this was the relief prayed for by the Company.

The trial court had no choice but to annul the entire order of the Commission when it found part of the order to be unreasonable and unlawful. The trial court has no power to modify the order of the Commission. Section 68–9–5, supra. In its findings of fact, the trial court stated in what manner the order of the Commission was unreasonable and for what reasons the order was annulled and vacated. In its conclusions of law, the trial court remanded the case for further action by the Commission, consistent with the judgment.

In the district court, the Company succeeded in having the Commission's order reversed and remanded. The fact that the trial court did not reverse and remand on all of the Company's points is unimportant, because the Company sought to have the Commission's order reversed and this was accomplished. Thus, generally the Company would be precluded from appealing the trial court's judgment. 4 C.J.S., Appeal and Error, § 183b (3). However, § 68–9–7, N.M.S.A., 1953 Comp., allows either

party to appeal to this court from a trial court's decision involving the Public Service Commission's orders.

The final judgment of the trial court was filed September 30, 1963, and on that same day the Company filed its notice of appeal. On October 8, 1963, the Commission filed its notice of appeal from the same judgment, and on October 23, 1963, the Company filed its notice of cross-appeal. On February 18, 1964, the Company filed its brief in chief with the clerk of this court, and on February 19, 1964, the Commission filed its brief in chief.

In view of § 68-9-7, supra, and the order in which the parties appealed and filed their briefs, we hold that the Company is the appellant and the Commission is the appellee and shall be considered as such.

The Commission bases its appeal on the contention that the district court, having affirmed the final order of the Commission on all issues except one, erred in annulling and vacating the Commission's final order. The one issue held against the Commission involves the determination of the district court that the Commission erroneously denied the Company a portion of the reproduction cost in ascertaining the fair value of the Company's property.

The Company presents two issues on which both the Commission and the district court found contrary to the position taken by the Company. The first contention of the Company concerns the amount which was established as the original cost. Secondly, in its application for rate adjustment, the Company requested approval of rate schedules which would allow it to receive $853,573 in total operating revenues and a net return to the Company of $103,642, after deducting what the Company claimed to be a proper allowance for state and federal income taxes in the amount of $99,471.

The order of the Commission, from which the petition for review was prosecuted, permitted the Company to receive total operating revenues of $696,553, total operating deductions of $607,443, yielding a return of $89,110 without any consideration given to income taxes, either state or federal. The Commission found that this would yield to the Company a rate of return of 6.4% on what they ascertained in the order to be the fair value rate base of the Company in the amount of $1,392,355.

The Commission found that the Company is a sole proprietorship owned by Vernah S. Moyston. It found that the test year ending December 31, 1961, is a representative period to be employed for the purpose of rate proceeding. The Commission found in findings Nos. 7, 8 and 10, that during the period from 1949 through 1961 the Company had invested in the property the sum of $448,746; that in such years had not capitalized this amount upon the books of the Company, but had charged it to operating expenses. The Commission also found that

the Company was required, under the Commission's General Order No. 8, to capitalize these items and determined, by Finding No. 11, that such items could not be included in ascertaining the original cost of the Company for the purpose of establishing the fair value of the Company. The Commission further found that the books of the Company, after being adjusted by the Commission to include therein certain real property of the Company that had been owned individually by Mrs. Moyston and had not theretofore been included in the Company's books, showed the original cost to the Company to be $1,186,466, with an applicable depreciation of $311,064, and that the original cost less depreciation of the Company's property was the sum of $875,402, not including the sum of $448,746 which had been invested in the Company's property and expensed. These items were in the nature of service extensions made by the regular employees of the Company which, under the Uniform System of Accounts, would normally have been included as a part of the cost of the property by capitalizing the same rather than by expensing them. The Commission accepted the reproduction value of the plant, based upon an inventory taken by the Company of the plant's property in the amount of $2,597,697, plus the value of the real estate which was not included in the Company's reproduction cost new appraisal, or a total reproduction cost new in the amount of $2,735,021. The Commission

then took the unrecorded original cost in the amount of $448,746, used the Handy-Whitman Cost Index of increased cost in utility construction to arrive at a value of $587,559 now attributable to the original unrecorded cost on the books of the Company, deducted that from their appraised value, and ascertained a reconstruction cost new of the Company before depreciation in the amount of $2,147,462. The Commission accepted the percent of depreciation shown by the Company appraisal and which had been checked by the engineering staff of the Commission, and arrived at a reproduction value of the Company's plant, after depreciation and after deduction of $587,559, in the amount of $1,800,174. This deduction from the reproduction cost of the Company, in ascertaining its present value, was not allowed by the district court and was the reason for the court's reversal of the decision of the Commission, and was the only item that the court decided favorably to. the Company on review in the district court. The Commission then took the book cost of the plant in service, gave equal weight to. each, and arrived at the fair value rate base of the Company plant in service in the amount of $1,337,788, to which they added the sum of $1,366 for material and supplies. and the sum of $53,201 for working capital, to arrive at a total fair value rate base in the amount of $1,392,355. By the use of this rate base, and a return of $89,110 as. the return before an allowance for state and

federal income taxes, the Commission arrived at what they found to be a fair return of 6.4% on the fair value rate base of the Company so established.

The Company takes the position before this court that the final result of the action of the Commission, and of the action of the district court in sustaining all portions of the Commission's order except that portion which deducted from the reproduction cost of the Company the sum of $587,559, arising out of the increased value in the amount of $448,746 in unrecorded original cost of the Company, resulted in an unreasonable, arbitrary, unjust, discriminatory and confiscatory order.

Two questions are presented in this case, the first being whether, under § 68-5-14, N.M.S.A., 1953 Comp., the Commission, in determining the fair value rate base upon which a public utility is entitled to earn, should include in that rate base capital costs which the utility improperly treated as expenses and thus recovered in the years in which they were incurred. Section 68-5-14, supra, provides:

"When in the exercise of its powers and jurisdiction, it shall be necessary for the commission to consider or ascertain the valuation of the properties or business of a public utility, it shall, in arriving at such valuation, give due consideration to the history and development of the property and business of the particular public utility, to the original cost thereof, and to the cost of reproduction as a going concern, and to other elements of value recognized by the laws of the land for rate making purposes. For the purpose of making such valuation the members of the commission and its duly authorized agents and employees shall at all reasonable times have free access to the property, accounts, records and memoranda of the utility whose property and rights are being valued, and such utility shall aid and co-operate with the commission and its duly authorized agents and employees to the fullest degree for the purpose of facilitating such investigation."

As already noted, the Commission found that no part of the improperly expensed amounts totaling $448,746 could be included in determining the original cost of the Company's property. The district court ruled that the Commission properly deducted from the original cost the sum of $448,746, which was not shown on the books of the Company as a part of the original cost of the plant, but which represented items expended for labor and materials and charged to expenses at the time such expenditures were made, and which items were presumably recovered by the Company from rates charged by the Company during the years in which the expenditures were made. However, the district court further found that the Commission deducted this same amount appreciated to the sum of

$587,559 from the determined cost of reproduction, and that the cost of reproduction which was fixed by the Commission at the sum of $2,147,462 as of December 21, 1961, was incorrect as not including the said sum of $587,559.

The district court's decision, as corrected by the correcting decision, found that all of the findings of the Commission in its final order are supported by evidence. The court's findings make it clear that the only error which it found in the Commission's order stems from the failure to include in the reproduction cost valuation of the utility plant the sum of $587,559, being the reproduction cost value of the $448,786 held by the court to have been properly excluded from the original cost valuation of the Company's property.

We turn to the dispute as to what amount the Company should be allowed as the "original cost" of its capital investment. The improperly expensed amounts involved here generally represent the labor and overhead costs which should also have been included in the capital accounts with the materials with which they were associated. The Commission and the trial court both excluded from "original cost" the amount improperly expensed.

In the many instances in which the question has been decided, the decisions are almost unanimous that, where prior capital investments were charged to operating expenses and the rate apparently fixed on that basis, a utility cannot later capitalize such amounts in determining original cost for rate making purposes. Peoples Gas, Light & Coke Co. v. Slattery, 373 Ill. 31, 25 N.E.2d 482; Re Bronx Gas & Electric Co., (1937) 24 P.U.R.(N.S.) 65; Re Westchester Lighting Co., (1936) 15 P.U.R. (N.S.) 299; City of Wheeling v. Natural Gas Company of W. Va., 115 W.Va. 149, 175 S.E. 339; Natural Gas Company v. Public Service Commission, 95 W.Va. 557, 121 S.E. 716; Colorado Interstate Gas Company v. Federal Power Commission, (10' CCA 1944), 142 F.2d 943. For a complete review of the authorities, see 9 P.U.R. Digest 2d, Valuation, §§ 122, 168, 254.

Here the Company argues that its property has actually cost more than the balance sheet accounts show. On this point in Re Bronx Gas & Electric Co., supra, the court stated:

"* * * If a company may be allowed to keep inaccurate accounts and then not only escape any responsibility for such inaccuracies but become entitled to larger property values than its books show, the usefulness of publicity, uniformity, and proper accounting has largely been destroyed.

"* * *

"The restoration of such costs to fixed capital would have another unjust effect. As part of fixed capital, these charges would ultimately have to be retired as the property was removed from service,.

thus requiring a larger reserve. Since this reserve is normally built up through operating expenses, the ultimate effect would be to charge operating expenses *again* with the same costs that had once been reported as operating expenses."

The Company relies strongly upon Hope Natural Gas Company v. Federal Power Commission, (4 CCA 1943), 134 F.2d 287, which holds that capital expenditures should not be excluded from the rate base on the ground that such items have been charged to expense and entered into the rates paid by customers, since neither the cost of the property nor the company's ownership is affected by the fact that it may have paid for the property with the proceeds of rates that were unreasonably high. We are of the opinion that the Hope case has no application here. See discussion of Natural Gas Company v. Federal Power Commission, supra, in Hope Natural Gas Company v. Federal Power Commission, supra, 134 F.2d page 302.

■ It is our opinion that the majority of the decisions reach a just and equitable result on this question and we so hold. The Commission and the district court did not err in excluding the improperly expensed amounts from the "original cost" valuation submitted by the Company for rate making purposes.

We turn next to the dispute over what amount the Company should be allowed as the reproduction cost of its capital investment. We reiterate that the improperly expensed amounts involved here generally represent the labor and overhead costs which should also have been included in the capital accounts with the materials with which they were associated. The Commission denied the use of these amounts in determining the cost of reproduction and the trial court overruled the Commission's finding and allowed the improperly expensed capital items to be used in ascertaining the cost of reproduction.

■ The power of the trial court to review and overturn an administrative body's decision is stated in Ferguson-Steere Motor Co. v. State Corporation Commission, 63 N.M. 137, 314 P.2d 894:

"* * * It is well settled in this state that it is not the province of the trial court to re-try a case brought before it on appeal from an administrative body or agency or to substitute its judgment for that of the agency, but the trial court is limited to a determination of whether the administrative agency's action was legal or reasonable. If the trial court did substitute its judgment and discretion for that of the Commission, the trial court erred and its judgment must be reversed. On the other hand, the courts are vested with the power and authority to set aside an order of such agency if it is unreasonable, unlawful, arbitrary,

capricious, or not supported by evidence. * * *"

See also, Johnson v. Sanchez, 67 N.M. 41, 351 P.2d 449. Following this rule, we hold that the Commission's action was based upon substantial evidence and the trial court's action in overruling the Commission's finding was error.

We have been unable to find any cases holding that, in determining the cost of reproduction of a public utility's plant facilities for rate making purposes, improperly expensed capital items could be added to the capital accounts in order to show total cost of reproduction. On the contrary, several cases specifically hold that such improperly expensed capital items must be excluded from the cost of reproduction.

In Natural Gas Company of W. Va. v. Public Service Commission, supra, the court stated:

"* * * We are of opinion that in any estimate of the present fair value of the company's property, based upon reproduction cost new, less depreciation, there may properly be included in such estimate a reasonable allowance for 'overhead charges,' if such charges have not already been paid as operating expenses, * * *. But no allowance for overhead costs should be made where they have already been paid by the public as operating expenses. The utility should not be permitted to capitalize such overhead charges and require the public to keep on paying a return on expenses already repaid the utility. If, however, it should be found that actual expenditures have heretofore been made for overhead costs which have not been charged to and paid as operating expense, allowance should be made therefor."

In Re Mondovi Telephone Company, (1932) P.U.R. 1933B 319, the Wisconsin Public Service Commission had this to say:

"When a company year after year has chosen to charge capital expenditures to annual operating expenses, with resultant overstatement of expenses and understatement of net income and book cost of property, the Commission believes the company cannot reasonably, at a later date, in determining a rate base, add to its capital account these plant expenditures previously absorbed in operating expenses. * * *

"* * * *

"To sum up, we have before us two sets of data for determining the rate base, namely, the book cost of the property as shown in the company's annual reports, and the appraised cost of reproduction.

"These appraisals are fatally defective and are, therefore, rejected in determining a rate base because they include property on which the company is not entitled to earn a return, to the extent that property included was originally paid for by operating expense charges. * * *"

See also, Re Mondovi Telephone Company, (1932) P.U.R. 1933D 142.

In Re Plainfield-Union Water Company, (1957) 18 P.U.R.3d 79, with regard to the company's practice of omitting construction overheads from its plant accounts in the determination of the reproduction cost, the commission stated:

> "* * * Examination of the company's reports shows that it does not include such overheads in its plant accounts. If these costs had been incurred and not capitalized, the charges must have been made through expenses. To now include the item in rate base would, in my opinion, require customers affected by the proposed rates to pay a return at current price levels for the recovered costs of an item charged to expenses in a past period."

See also, Horton v. Badger State Telephone & Telegraph Company, (1933) 1 P.U.R. (N.S.) 409.

The Company cites authorities holding that past losses are not an element to be considered in determining the base value and whether the rate is confiscatory. We do not disagree with those authorities but we note they are distinguishable from the instant case.

By excluding the improperly expensed amounts, the rate of return in the future would not decrease because of past losses. The exclusion is merely a continuation of the Company's own selection of bookkeeping methods, and no hardship is involved in requiring the Company to be consistent in their accounting practices. The Company treated these amounts as operating expenses and thereby reduced its income for that period. When the income is reduced, the allowable rate of return is increased, the consumer is subject to the higher rate, and the Company is entitled to receive an increase in rates. The increase in rates sought here, however, would not be equitable if the Company were allowed to assail its prior accounting procedure and now commence capitalizing overhead costs and like expenditures. The consumer would be paying a rate based on capital accounts which have arisen from accounting methods not actually used in the past and not intended to be used in the future.

■ The trial court's findings of fact Nos. 1 and 4 are erroneous, insofar as they find the Commission's findings incorrect as to the cost of reproduction. We hold that the Commission's findings of fact Nos. 12, 16, 17, 18, 19, and 22 were just and reasonable and are supported by substantial evidence.

The remaining issue arises from the refusal of the Commission and the trial court to grant the Company any allowance for either federal or state income taxes, as expenses of the utility for rate making purposes, which were assessed against Vernah S. Moyston in her individual capacity. The

Company requested that she be allowed, as a deduction from income, the same amount payable by her utility, were it incorporated. This requested amount is substantially lower than that which was actually paid by her as the utility owner.

In its final order, the Commission stated:

· "However, we are convinced that there is no law supporting Petitioner's position that an allowance should be made for income taxes in this proceeding. She urges that the cases supporting the allowance of income taxes as an expense to corporate utilities for rate making purposes support her position that she should also have this allowance. But we must point out that she does not pay a corporate income tax. She pays only the same income tax on her income from her utility operation that the corporate public utility stockholder pays on the dividends which he receives as a result of his ownership of a portion of a corporate utility. No consideration is ever given by any regulatory body in rate making proceedings to the income taxes that must be paid on the dividends received by the individual stockholders of a corporate utility. Yet, in effect, this is exactly what Petitioner is asking us to do."

The trial court stated in its opinion:

"No authorities have been cited showing that an individual is entitled to the same treatment as a corporation, as to allowable tax deductions, under the equal privilege clauses of the state and federal constitutions, but assuming a constitutional question, it would seem that the fact that the income derived by the Hobbs Gas Company from its consumers is paid over directly to Mrs. Moyston as a part of her ordinary income, would place her in a separate classification from that enjoyed by corporations.

"I have concluded that the Commission acted properly in refusing to allow any deduction as an operating expense for state and federal income taxes which are assessed against Mrs. Moyston in her individual capacity, and since no such taxes are assessable against the Hobbs Utility Company as a separate entity, it would be improper to include any assumed assessment as an operating expense of the utility."

█ The New Mexico Public Utility Act, Ch. 68, N.M.S.A., 1953 Comp., states in part:

"68–3–1(B). It is the declared policy of the state that the public interest, the interest of consumers, and the interest of investors require the regulation and supervision of such public utilities to the end that reasonable and proper services shall be available at fair, just and reasonable rates, and to the end that capital and investment may be encouraged and attracted so as to provide for the construc-

tion, development and extension, without unnecessary duplication and economic waste, of proper plants and facilities for the rendition of service to the general public and to industry.

"68–3–2(D). 'Person' means individuals, firms, partnerships, companies, corporations, * * *.

"68–3–2(F). 'Public utility' or 'utility' means every person * * * that now does or hereafter may own, operate, lease or control: * * * (2) Any plant, property or facility for the manufacture, storage, distribution, sale or furnishing to or for the public of natural or manufactured gas, * * *."

From a close reading of the above provisions, it is plain that the New Mexico legislature has made no distinction between public utilities operated as "individuals, firms, partnerships, companies, corporations." Nowhere in this Act is the Commission given authority, for the purpose of rate making, to make a distinction between a public utility operated as a corporation from one operated as a sole proprietorship.

■ The Commission, the trial court and the parties involved in this case all agree that income taxes imposed on an incorporated public utility are properly deductible as expenses for rate making purposes. See Galveston Electric Company v. City of Galveston, 258 U.S. 388, 42 S.Ct. 351, 66 L.Ed. 678; Georgia Railway & Power Co. v. Railroad Commission, 262 U.S. 625, 43 S.Ct.

680, 67 L.Ed. 1144; Re Southern Bell Telephone & Telegraph Company, (1952) 92 P.U.R.(N.S.) 97; 4 P.U.R. Digest 2d, Expenses, § 114; 7 P.U.R. Digest 2d, Return, § 46.

The trial court ruled that, since the income from the Company was paid directly to Mrs. Moyston as a part of her ordinary income, she is placed in a separate classification from that enjoyed by a corporation. This reasoning by the trial court is erroneous. For all practical purposes, Mrs. Moyston is the Company and she is entitled to and accountable for all that pertains to its operation.

Since Mrs. Moyston is not a resident of New Mexico, this state can tax her according to income which she receives from doing business in the state as the Company, and this tax is an expense of that business. We cannot ignore the practicality of the situation here presented. It would be wholly unreasonable to conclude that the legislature intended that taxes imposed on the income of an unincorporated utility, as distinguished from an incorporated utility, are not proper costs of carrying on its business.

In 73 C.J.S. Public Utilities, § 10, pp. 1005–1006, it is stated:

"* * * The exercise of its power by the state is further limited, of course, by the state and federal constitutions, in contravention of which no regulation may be made; and the legislature may not, under

the pretense of regulation, deprive a utility of any of its essential rights and privileges, but all regulations must be in fact within the police power. Any regulation, therefore, which operates as a confiscation of private property or constitutes an arbitrary or unreasonable infringement of personal or property rights is void, because it is repugnant to the constitutional guaranties of due process and equal protection of the laws. * * *"

Fixing rates so low as to constitute confiscation is the same whether the utility is a corporation or an individual. The constitutional provisions prohibiting confiscation regulation are the same for individuals as for corporations. Neither the constitution nor our statute distinguishes between sole proprietorships and corporations. The record here is uncontradicted that the rates fixed as to this utility, if it were owned by a corporation, would be confiscatory and accordingly would fail. It, therefore, follows that the rates set by the Commission and the trial court must fail as to the Company.

The Commission and the trial court further reasoned that, since the Company did not pay any corporate income tax and none being assessable against the Company, it would be improper to allow any portion of the individual tax paid by Mrs. Moyston on her income from the utility.

The trial court and the Commission apparently placed no significance on the fact that, were the Company to incorporate, the deduction sought by Mrs. Moyston would be proper, and they were unwilling to recognize, as a corporate tax, a tax not actually paid as such. In effect, they refused to allow Mrs. Moyston the benefit of a hypothetical tax.

In re Hobbs Gas Company, (1959) 29 P.U.R.3d 526, a decision involving this Company, such a tax allowance was made as sought here and, as pointed out in that decision, the Commission would be required to make the tax allowance immediately upon the incorporation of the Company. The result is to force the proprietor to incorporate the business, regardless of whether or not she has sound reasons for operating as a proprietorship. That decision denies to the owner of the utility the right to select whether or not the operation is by a corporation or by a proprietorship, by reason of the denial of an allowance of state and federal income taxes. That decision makes a classification between corporate utilities and utilities operated as sole proprietorships, which is not made by the New Mexico legislature and cannot be made by the Commission, or by the court, without invading the constitutional rights of the owner. Further, the consumers cannot benefit by forcing the Company to incorporate, because immediately after the incorporation the Commission, under its own holdings, would have no choice but to permit the amount of taxes now requested by the pro-

prietor to be passed on to the rate paying public.

The New Mexico Public Service Commission and the Santa Fe County district court dealt with a hypothetical tax case in Re Southern Union Gas Company, (1960) 36 P.U.R.3d 60; (1961) 40 P.U.R. 3d 481. The Commission's original order is set out in 36 P.U.R.3d 60. The case was then appealed to the district court, reversed and remanded in cause No. 31074, Santa Fe County, and the Commission's order complying with the district court's decision appears in 40 P.U.R.3d 481. In that case, Southern Union Gas Company was engaged in business as a public utility in New Mexico, as well as utility and non-utility operations in other states. The utility operations, both in and out of New Mexico, produced profit, but its non-utility operations produced losses which reduced its tax liability. The original hearing was on the Company's application to increase its rates. In 36 P.U.R.3d 60, 64, the Commission found that:

"23. Hypothetical federal income taxes computed on the basis of petitioner's net operating income attributable solely to petitioner's New Mexico public utility operation for the test year 1958, adjusted, would amount to $1,590,110, * * *.

"24. Petitioner actually paid, on income from its total company operations,

federal income taxes for the calendar year 1958 in the amount of $1,125,528.

" *   *   *

"27. For the purpose of this proceeding, the allowance for income taxes for petitioner's New Mexico public utility operation, should not exceed a reasonable portion of the amount of income taxes actually payable by petitioner on its total company operations properly allocable to the New Mexico public utility operation.

" *   *   *

"29. Petitioner's New Mexico public utility operation, during the test year, produced a substantial income for purposes of taxation, while petitioner's non-utility operations produced losses for purposes of taxation, thus contributing to the reduction of the total income taxes actually payable by petitioner."

The district court of Santa Fe County, in reversing and remanding the Commission's order, found:

"4. The Commission's order was unreasonable, unlawful and confiscatory in determining an allowance for Federal income tax in the manner set out in Finding No. 3, above, and in failing to determine the reasonable and proper allowance for Federal income tax by computing the amount of tax liability which would be directly associated with and attributable to Petitioner's New Mexico public

utility income as determined, if Petitioner had no other operations whatever, and without regard to the income tax effect of Petitioner's other businesses and activities and expenses which are treated by the Commission as non-utility in character."

The Commission, on remand in 40 P.U.R. 3d 481, 485, 494, stated:

" * * * The district court vacated the commission's order on the ground that it had improperly determined the income taxes to be allowed to petitioner. In this order, we comply with the mandate of the court and treat petitioner's New Mexico public utility operation as a separate entity and in so doing have greatly increased the income tax allowance. * * *"

The Commission found:

"34. In order to permit petitioner to earn the return above allowed from its New Mexico public utility operation alone, after income taxes attributable to that operation alone, the sum of $2,556,-755 should be allowed petitioner for such income taxes, in accordance with the decision and decree of the district court in the review action. The amount so allowed for income taxes reflects the allocation deemed reasonable by the commission, to the New Mexico public utility operation. * * *"

To reach this result it was necessary to calculate hypothetical income taxes—taxes not actually paid or payable. In the above order, the Commission illustrated that rate making must be applied in a manner which produces reasonable and realistic results. The hypothetical tax calculations, such as used in the above case, establish that the fundamental inquiry is not limited to technical distinctions, but is determined by practical economic facts.

See also, Southern Bell Telephone and Telegraph Company v. Louisiana Public Service Commission, 239 La. 175, 118 So. 2d 372, which decided that the commission's determination of telephone rates, based upon a hypothetical capital structure, was proper so long as the rates were just and proper. The court, in listing the states which almost universally approve of this hypothetical formula, included State Corporation Commission v. Mountain States Tel. & Tel. Co., 58 N.M. 260, 270 P.2d 685.

The realistic aspect of the case before us is that income taxes, in the amount the Company seeks to deduct, have been paid by Mrs. Moyston as the sole proprietor of the Company and not as corporate income taxes. Mrs. Moyston does not seek to deduct her much higher individual taxes paid on the utility's income, because she is of the opinion that the amount equivalent to a corporation's deductions would give rise to the most just and reasonable rate of return. We see no reason to disagree with the Company's candid admission. The Commission stated that:

" * * * She pays only the same income tax on her income from her utility operation that the corporate public utility stockholder pays on the dividends which he receives as a result of his ownership of a portion of a corporate utility. No consideration is ever given by any regulatory body in rate making proceedings to the income taxes that must be paid on the dividends received by the individual stockholders of a corporate utility. Yet, in effect, this is exactly what Petitioner is asking us to do."

The statement, that the Company is in the same position as a utility stockholder, is incorrect because Mrs. Moyston pays income taxes on 100% of the taxable income of the utility, while a stockholder pays taxes on the amount declared as a dividend which is paid out of corporate income by vote of the directors of the corporation. The stockholders' dividends are not declared and distributed from the corporation's income until the corporation deducts the tax payable on its taxable income and retains that amount of the remaining income which it deems necessary for its own purposes. Only after the income has been reduced in this manner by action of the directors does the stockholder receive any dividends.

The Commission cites cases in which several state regulatory commissions fixed rates of unincorporated public utilities without allowance of any federal or state income taxes as expenses. These decisions of the commissions, with two exceptions, apparently represent the only decisions on the tax issue before this court, and we have been unable to find any court decisions on this issue. The exceptions are two unreported California Public Service Commission decisions cited by amici curiae which allow tax deductions equal to the amount payable, were the utility a corporation. These commission decisions, although partially persuasive, do not aid us in our decision in this case.

█ It is clear that the Company's operations are and have been subjected to federal and state income taxes in substantial amounts, and that rates which fail entirely to take such taxes into account as operating expenses are unfair, unjust, unreasonable and discriminatory.

We hold that an amount equal to the tax the Company would pay, if incorporated, is a reasonable and realistic amount to be deducted from the Company's taxable income for rate making purposes.

The judgment of the district court is reversed and remanded with direction that the judgment heretofore entered be vacated and set aside, and a judgment entered consistent with this opinion.

It is so ordered.

CARMODY, C. J., and JAMES M. SCARBOROUGH, District Judge, concur.