717 P.2d 93

J. Felix **TAPIA**, Petitioner-Appellee,

v.

**CITY OF ALBUQUERQUE, Frank A. Kleinhenz, Chief Administrative Officer, Respondents-Appellants.**

No. 8197.

Court of Appeals of New Mexico.

March 6, 1986.

Jeffrey L. Baker, Tryon, Pompei & Baker, P.A., Albuquerque, for petitioner-appellee.

Stephen E. Hosford, Gail Stewart, Albuquerque, for respondents-appellants.

## OPINION

GARCIA, Judge.

This is an appeal from the district court's reversal of an administrative personnel decision. Following an administrative determination favorable to the City of Albuquerque, J. Felix Tapia petitioned the district court of Bernalillo County for a writ of certiorari, alleging that respondent failed to follow its own tie breaking rules and regulations to determine eligibility for promotion, and, therefore, that the administrative decision was unlawful, arbitrary, capricious and not supported by substantial evidence. Petitioner raised other allegations in the petition for certiorari that are not before this court on appeal. The petition was granted and the district court held in favor of petitioner and against the city. We reverse the district court and reinstate the determination made by the administrative hearing officer.

### FACTS

In 1973, Tapia and Bessom joined the Albuquerque Fire Department (AFD). Both graduated from the fire academy in the same class. At the time they were hired, the city assigned sequential "man numbers" to identify its employees. As between these two employees, petitioner had the lower "man number."

In August of 1974, petitioner resigned from the fire department for personal reasons and moved to California. The effective date of his resignation was September 7, 1974. Petitioner had contemplated embarking on a new career in California, but his plans did not develop as expected. Shortly after his relocation in California, he telephoned the Albuquerque Fire Chief and sought to be reinstated. His request was granted and petitioner returned to Albuquerque. He was reinstated on September 16, 1974. Petitioner kept the same "man number" which had previously been assigned to him. Bessom did not have any interruption in his service with the city.

Promotions within the AFD are governed by the Personnel Rules and Regulations of the City of Albuquerque. Individuals seeking a promotion are required to qualify on a promotional examination. Section 265 of the city's Personnel Rules and Regulations provides that everyone who scores seventy percent or higher on the examination will be placed on the promotional list, but if that number does not represent twenty-five percent of the persons taking the test, then the top twenty-five percent of the examinees, based on their scores, will be placed on the promotional eligibility list.

In 1978, petitioner and Bessom were among the group of examinees seeking to be placed on the emergency medical driver promotional eligibility list. Both petitioner and Bessom took the test and achieved identical scores. Bessom's length of uninterrupted service with the department was longer than petitioner's, and accordingly, he was placed on the list ahead of petition-

er. At the time of the 1978 examination, petitioner's "man number" was lower than Bessom's. When the promotional eligibility lists were posted, petitioner learned that the city relied upon Bessom's uninterrupted service to break the tie. Petitioner did not grieve from this personnel determination.

In 1980, the city dropped its original "man number" designation. The AFD, however, found employee numbers useful for internal purposes and continued to use sequential numbers to identify employees. New numbers were assigned to their employees for departmental purposes. The new numbering system was not intended to alter an employee's relationship vis-a-vis another employee. The new numbers were assigned based on the original numbers given to employees, and petitioner was assigned No. 317, Bessom was assigned No. 326. At the time of this assignment, respondent erroneously failed to take into account petitioner's interrupted service in 1974, consequently petitioner was given a lower "man number."

In 1983, a promotional list for the position of Captain was being created. Petitioner and Bessom took the promotional examination. Nine names, representing twenty-five percent of the individuals examined, were to be included on the promotional list. Both petitioner and Bessom tied for the ninth position with identical scores of sixty-four percent on the promotional eligibility exam. On November 23, 1983, respondent's personnel services director published the promotional eligibility list and placed petitioner's name in the ninth slot.

After the list was posted, Bessom and petitioner spoke with one another concerning the fact that they received identical scores and that on the 1978 examination, the tie was broken in favor of Bessom due to the greater length of his uninterrupted service. Petitioner brought the matter to the attention of the AFD's staff and explained that he had a break in service in 1974. Similarly, Bessom wrote to the fire chief bringing to his attention that both examinees had tied but that his own service

with the department was longer than petitioner's. Bessom requested that his name be added to the promotional eligibility list.

Relevant portions of respondent's personnel rules state:

230. PROMOTIONAL EXAMINATIONS

\* \* \* \* \* \*

231. Scoring

\* \* \* When two or more applicants have the same final score, preference shall be given according to seniority, if no other order of preference has been specified.

Seniority is defined in the personnel rules as "continuous uninterrupted service in a given division, department, or with the city...." Upon a review of petitioner's and Bessom's personnel files, respondent confirmed that petitioner had a break in service, and consequently, Bessom had seniority.

A revised promotional schedule was posted substituting Bessom's name for that of petitioner. Additionally, respondent assigned a new "man number" to petitioner reflecting the break in his service. Petitioner's number was changed from 317 to 367 to credit his resignation and reinstatement. The new number corresponded to a hire date of September 1974 when petitioner was reinstated after his resignation.

Following the issuance of the corrected promotional list, petitioner filed a grievance alleging, among other things, that his name was improperly removed from the captain's promotional list. After an evidentiary hearing, the city's administrative hearing officer found that petitioner's name had been removed from the list because the city's personnel department determined that petitioner had a break in service. The break in service was attributed to petitioner's prior resignation and subsequent reinstatement. Additionally, the hearing officer found that Bessom had no break in service since his employment with the city. The hearing officer determined that the eligibility list had been compiled in accordance with the city's personnel rules and

regulations. The hearing officer concluded that the action taken by the AFD in withdrawing petitioner's name from the promotional list and substituting Bessom's name was justified. Subsequent to the issuance of the administrative officer's findings, conclusions and recommendations, the city's chief administrative officer concurred in the findings and recommendations.

## SCOPE OF ADMINISTRATIVE REVIEW

In reviewing administrative decisions, courts do not have unfettered discretion. The judicial function is to ascertain whether the administrative decision comports with legal principles. *Mutz v. Municipal Boundary Commission*, 101 N.M. 694, 688 P.2d 12 (1984).

On appeal from the district court's initial review, the focus of further appellate review is the administrative decision, and this court must conduct the same review as the district court. *Groendyke Transport Inc., v. New Mexico State Corporation Commission*, 101 N.M. 470, 684 P.2d 1135 (1984). In reviewing the hearing officer's decision, we determine whether the district court erred in the original appeal. *See Jimenez v. Department of Corrections*, 101 N.M. 795, 689 P.2d 1266 (1984).

Thus, our task is two-fold: ultimately, we must determine if the district court erred in its ruling that the city's action "was arbitrary and capricious not supported by substantial evidence in the whole record, and unlawful." *Mutz v. Municipal Boundary Commission*. Nevertheless, to make that determination, we independently examine the entire administrative record and decide whether the decision of the hearing officer was arbitrary, capricious, supported by substantial evidence and within the scope of the administrative body's authority. *Conwell v. City of Albuquerque*, 97 N.M. 136, 637 P.2d 567 (1981).

In determining the correctness of the district court's decision, we note that the district court is required to view the evidence presented in the light most favorable to the hearing officer's decision. *Wolfley v. Real Estate Commission*, 100 N.M. 187,

668 P.2d 303 (1983); *New Mexico Department of Human Services v. Tapia*, 97 N.M. 632, 642 P.2d 1091 (1982). The trial court does not reweigh evidence nor does it substitute its judgment for that of the administrative factfinder. *Mutz v. Municipal Boundary Commission*.

## WHETHER THE ADMINISTRATIVE DECISION WAS FRAUDULENT, ARBITRARY OR CAPRICIOUS

Respondents argue that the trial court erred in its finding of arbitrary and capricious behavior by the personnel board. The city points to the tie breaking procedure of the Personnel Rules and Regulations and the union contract with AFD. The city's rules and regulations provide that in the event of a tie on a promotional exam, "seniority" shall act as the tie breaker. The Rules define seniority as, "continuous uninterrupted service in a given division, department or with the city ..." The correct interpretation of this definition is the crux of the appellate issue. Petitioner argues that the city failed to follow its own rules in calculating seniority. Testimony presented at the administrative hearing indicated that the deputy fire chief calculated petitioner's and Bessom's service within the department, and that no one calculated service within a division. Petitioner argues that seniority within a division must *first* be calculated, *then* within the department, *then* within the city. Thus, according to petitioner's argument, since the city did not calculate service within a division, it violated its rule. No evidence was presented to the hearing officer, nor was any tender made to show that either petitioner's or Bessom's service outside of the department, if any, would have altered the calculations.

The parties have argued, in effect, that the tie breaking procedure followed by the city was not arbitrary or capricious, provided it was consistent with the ordinance. We conclude that the procedure followed was consistent with the ordinance.

■ The city argues that the use of the conjunction "or" in the definition of seniority signifies alternatives, not an inclusive

list of mandatory considerations. *See First National Bank v. Bernalillo County Valuation Protest Board,* 90 N.M. 110, 560 P.2d 174 (Ct.App.1977). The city reasons that in a case where two employees are within the same department, the city can properly consider their length of service within the department. The city's interpretation of its own personnel rules is reasonable and is in accord with standard grammatical construction. *See generally* W. Strunk and E.B. White, *The Elements of Style* (1959). Furthermore, an administrative construction given a statute or ordinance by the agency charged with its administration is persuasive and will not be lightly overturned. *Perea v. Baca,* 94 N.M. 624, 614 P.2d 541 (1980); *Valley Country Club v. Mender,* 64 N.M. 59, 323 P.2d 1099 (1958).

Additionally, Section 231 of the Personnel Rules states that seniority is used as a tie breaker, "if no other order of preference has been specified." The evidence indicates that for many years the fire department advised its employees, by information on the promotional list, that the following criteria would be considered in breaking ties: (a) length of uninterrupted service with the fire department; (b) service with the City of Albuquerque; and (c) lowest employee number.

The evidence before the hearing officer indicated that the Albuquerque Fire Department has used service within the department as an appropriate tie breaker. In this case, the result would be the same. We cannot state, under the facts of the record in this case, that the administrative construction of the city's personnel rules was clearly erroneous. Accordingly, we determine that the city's construction of its personnel rule was not arbitrary or capricious.

## SUBSTANTIAL EVIDENCE

■ In making the requisite substantial evidence determination, this court must look to the whole record. *Duke City Lumber Company v. New Mexico Environmental Improvement Board,* 101 N.M. 291, 681 P.2d 717 (1984). The facts before the district court and before this court

show that petitioner had a break in employment from September 7, 1974 to September 16, 1974. No similar interruption existed for Bessom. In the previous tie between petitioner and Bessom, the tie breaker used was uninterrupted service. The uncontradicted testimony of the AFD supervisory personnel who testified, was that uninterrupted service is the first tie breaker. Although Chief Allred initially directed personnel to break the tie on the basis of the newly issued numbers, he did not know of Tapia's break in service. In addition, there was testimony that, while flawed, AFD's newly issued numbers were intended to reflect uninterrupted service.

We determine that, on balance, there was substantial evidence to support the hearing officer's decision and the trial court erred in holding that the decision was not so supported.

## LAWFULNESS OF THE ADMINISTRATIVE DECISION

The issue of the "lawfulness" of the hearing officer's decision goes to the question of whether the city acted within the scope of its authority in removing petitioner's name from the promotional eligibility list. *See generally Mutz v. Municipal Boundary Commission.* Petitioner failed to raise any issue as to the scope of the hearing officer's authority below, nor does petitioner adequately raise this issue on appeal. *See Kaiser Steel Corp. v. Revenue Division, Taxation and Revenue Dept.,* 96 N.M. 117, 628 P.2d 687 (Ct.App. 1981).

## WHETHER THE DISTRICT COURT EXCEEDED THE PROPER SCOPE OF REVIEW

■ During proceedings before the district court, petitioner's attorney argued that the court could equitably resolve the case by simply adding petitioner's name to the list without removing Bessom's. Counsel also argued that petitioner was a good candidate for promotion and would make an excellent captain. The court concluded that petitioner's name should be added to the list and stated "[t]he Court's decision in no way directs the removal of Clifford Bessom, employee man number 326 from the

promotional list." Adding petitioner's name to the list would expand the promotional list to ten. The court's directive would result in the city violating Section 265 of respondent's Personnel Rules which limits the eligible candidates to twenty-five percent of the examinees. While the trial court's disposition of this case may appear equitable in that it affords petitioner an opportunity to be promoted while not infringing upon Bessom's rights, it is not the province of the reviewing court to substitute its judgment for that of the administrative body. *Lone Mountain Cattle Company v. New Mexico Public Service Commission*, 83 N.M. 465, 493 P.2d 950 (1972).

In *State Corporation Commission v. Mountain States Tel. & Tel. Co.*, 58 N.M. 260, 270 P.2d 685 (1954), a telephone and telegraph company challenged the rate of return granted by the regulatory commission. The telephone company sought to have the court grant a higher rate. The court noted that it was not a rate-making body and did not have the authority to determine what a fair rate is. That is the function of the administrative body. Similarly, a reviewing court may not appropriately determine whether the city's promotional list should or should not be expanded.

We do not dispute that petitioner may possess the attributes of a good fire captain, but it is neither the district court's prerogative, nor ours, to make such determinations. When a court finds an administrative order to be unreasonable or unlawful, it has the power and authority to set aside the order. *Moyston v. New Mexico Public Service Commission*, 76 N.M. 146, 412 P.2d 840 (1966). On these facts, the district court exceeded its authority by modifying the administrative decision. *See id.*

**WHETHER THE COURT ERRED IN DETERMINING THAT RESPONDENT WAS ESTOPPED FROM FINDING THAT PETITIONER DID NOT HAVE SENIORITY OVER BESSOM**

█ The trial court concluded that the city was estopped from claiming that petitioner had less seniority than Bessom. The basis for the court's determination was that the department reassigned "man numbers" to employees in 1980 and that petitioner could rely upon the accuracy of his assigned number for purposes of promotion. Further, the district court determined that when the city removed petitioner's name from the promotional list, such a removal was inconsistent with the city's 1980 memorandum reassigning "man numbers." We hold that this conclusion was not supported by substantial evidence and need not reach any other argument made by appellant.

The elements of equitable estoppel are contained in *Capo v. Century Life Insurance Company*, 94 N.M. 373, 610 P.2d 1202 (1980).

The essential elements of equitable estoppel as related to the party estopped * * * are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention that such conduct shall be acted upon by the other party * * * and (3) knowledge, actual or constructive, of the real facts.... As related to [the party] * * * which claims estoppel, the essentials are: (1) lack of knowledge and of means of knowledge of the truth as to the facts in question * * * (2) reliance upon the conduct of the party estopped * * * and (3) action based thereon of such a character as to change its position prejudicially.

*Id.* at 377, 610 P.2d 1202.

In viewing these requisite elements of estoppel in relation to the facts in this case, there is no evidence which would indicate that the city made false representations or concealed material facts. False representation is defined in Black's Law Dictionary as "[a] representation which is untrue, willfully made to deceive another to his injury." "Concealment" is defined as "[a]

withholding of something which one knows and which one, in duty, is bound to reveal." (4th Ed.1968). Both terms require intentional conduct. The record is devoid of any willful representation made to deceive petitioner. Certainly, petitioner knew of his break in service, and no action by the city concealed that fact from him.

Secondly, while the record does confirm that when petitioner was rehired, a change was not made in his "man number," there is no evidence to show that the failure to issue a corrected "man number" was made with the intent to deceive petitioner. To the contrary, petitioner was put on notice that his break in service would result in him having less seniority than Bessom. Petitioner received actual knowledge of this fact based on the previous test tie with Bessom.

Third, the record does not support that the city's error was made with the intent that the false conduct be acted upon by petitioner. When the department reissued "man numbers" in 1980, the accompanying memorandum indicated that one of the reasons for the reissuance of the numbers was to correct problems in the previous "man number" system. One problem identified in the memo, was "[T]he result of persons terminating their employment with the Fire Department or City of Albuquerque, and then being rehired at some later date with retention of the previously assigned Employee Number." Petitioner's situation was the exact problem sought to be corrected by the new number system. The 1980 memorandum further states that the new employee numbers would be based on the following criteria:

1. Length of uninterrupted service with the Fire Department.
2. Length of uninterrupted service with the City of Albuquerque.
3. Previous service with Fire Department.
4. Previous service with the City of Albuquerque.

When petitioner's new employee number was issued based on the presumption that he had uninterrupted service, petitioner knew that he did have interrupted service. It was clear that there was an error. The record substantiates the existence of an error. An error or oversight is not an intentional misrepresentation. Finally, petitioner may not assert that he lacked knowledge of the true facts because he, more than anyone else, was aware of his own employment record. In sum, the record does not substantiate the requisite elements for a conclusion of estoppel.

## CONCLUSION

Based on a review of the record as a whole, and based on the applicable law that is to be followed in administrative reviews, we determine that the trial court's decision should be reversed and that the findings and conclusions of the administrative officer are reinstated. No costs are awarded.

**IT IS SO ORDERED.**

ALARID and MINZNER, JJ., concur.