1998-NMCA-106

964 P.2d 56

**BOARD OF COUNTY COMMISSIONERS
OF SIERRA COUNTY, Plaintiff–
Appellant,**

v.

**Archie Dale HARRISON,
Defendant–Appellee.**

No. 18252.

Court of Appeals of New Mexico.

July 7, 1998.

James W. Catron, LaJoya, for Plaintiff-Appellant.

Anthony J. Filosa, Filosa & Filosa, Truth or Consequences, for Defendant-Appellee.

## OPINION

BUSTAMANTE, Judge.

{1}   The Board of County Commissioners of Sierra County (the County) appeals the district court's decision upholding the reinstatement of Archie Dale Harrison (Harrison) as the Chief Detention Officer for the Sierra County Detention Center (SCDC). The County raises four issues on appeal that boil down to three essential arguments. First, the County argues that it was entitled to a de novo appeal in the district court. Second, the County argues that the hearing officer's decision was arbitrary and capricious because substantial evidence supports the County's decision to terminate Harrison's employment as the SCDC's Chief Detention Officer. And third, the County argues that the hearing officer's decision exceeded the scope of his authority. We affirm as to the first and second issues but reverse and remand with instructions as to the third.

{2}   The County issued a Notice of Intent to Dismiss Harrison, setting forth three separate charges against him. A pre-disciplinary hearing was held, and county manager Tony Chance issued a Pre–Disciplinary Hearing Decision terminating Harrison's employment. Harrison filed a grievance and requested a hearing pursuant to the Sierra County Personnel Policy Manual, Sierra County, N.M., Ordinance 93–022 (Aug. 16, 1993) (the Personnel Ordinance). Section 8.3(C) of the Personnel Ordinance provides for the appointment of a hearing officer to conduct a post-disciplinary hearing to review the county manager's disciplinary decision.

Section 8.4(C) of the Personnel Ordinance provides that "[t]he hearing officer may uphold, modify or reverse the decision of the County Manager and may reinstate the employee and award back pay and benefits."

{3}   Following the post-disciplinary hearing, the hearing officer issued a decision reversing the county manager's decision to terminate Harrison. The hearing officer's decision also required that Harrison be reinstated with back pay. However, instead of awarding Harrison back pay from the time of his termination, the hearing officer ordered that Harrison should be denied back pay for the first fourteen weeks following the termination.

## I. THE DISTRICT COURT DID NOT ERR IN DENYING TRIAL DE NOVO

{4}   The County argues that, pursuant to NMSA 1978, Section 39–3–1 (1955), it was entitled to trial de novo in the district court on the issues it raised in its appeal from the hearing officer's decision. Section 39–3–1 provides, in full: "All appeals from inferior tribunals to the district courts shall be tried anew in said courts on their merits, as if no trial had been had below, except as otherwise provided by law." The district court below concluded that, "[w]hile the County is correct that the word 'tribunal' is broad enough to include a personnel board or hearing officer, I do not think that historically its use in the statute was intended to be that broad." We agree with the district court's conclusion.

{5}   "Construction of a statute is a question of law reviewed *de novo*." *State v. Arellano*, 1997–NMCA–074, ¶ 3, 123 N.M. 589, 943 P.2d 1042 (emphasis added). "When interpreting a statute, its provisions must be read together with other statutes relating to the same subject to ascertain legislative intent." *Benavidez v. Sierra Blanca Motors*, 1996–NMSC–045, 122 N.M. 209, 213, 922 P.2d 1205, 1209; see also *Cummings v. X-Ray Assocs. of New Mexico, P.C.*, 1996–NMSC–035, 121 N.M. 821, 918 P.2d 1321.

{6}   When the Legislature or the people of New Mexico have intended trial de novo at the district court level after prior administra-

tive proceedings, they have specifically provided for such review. *See, e.g.,* N.M. Const. art. XVI, § 5 ("In any appeal to the district court from the decision, act or refusal to act of any state executive officer or body in matters relating to water rights, the proceeding upon appeal shall be de novo[.]"); NMSA 1978, § 28–1–13(A) (1987) ("Any person aggrieved by an order of the [Human Rights C]ommission may obtain a trial de novo[.]"); NMSA 1978, § 33–2–11(B) (1990) ("Upon exhaustion of this administrative remedy [the corrections department's internal grievance procedure], the first judicial proceeding shall be a de novo hearing, unless otherwise provided by law."); NMSA 1978, § 69–36–17(D) (1993) ("[A]ny order of the [Mining C]ommission concerning a penalty may be appealed de novo to the district court within thirty days from issuance of the order imposing the penalty."); *see also* NMSA 1978, § 12–8–22(A)(6) (1969) (providing that standard of review of agency decisions under the Administrative Procedures Act is abuse of discretion). Each of the foregoing provisions would be a nullity if Section 39–3–1 was meant to provide for trial de novo from every administrative proceeding. We reject such a result.

## II. THE HEARING OFFICER'S DECISION WAS NOT ARBITRARY OR CAPRICIOUS

{7} The County also argues that the hearing officer's decision was arbitrary and capricious because there was substantial evidence to prove that (1) Harrison's conduct created the threat of a guard walkout; (2) Harrison mistreated inmate Morales; and (3) Harrison endangered the safety of jail personnel and inmates by denying access to a key for the jail's upstairs fire exit. Because the County is appealing from the district court's decision upholding the decision of the hearing officer, "the focus of further appellate review is the administrative decision, and this court must conduct the same review as the district court." *Tapia v. City of Albuquerque,* 104 N.M. 117, 120, 717 P.2d 93, 96 (Ct.App.1986). Therefore, "we independently examine the entire administrative record and decide whether the decision of the hearing officer was arbitrary, capricious, sup-

ported by substantial evidence and within the scope of the administrative body's authority." *Id.* Although we must look to the whole record to reach our decision, like the district court, we are "required to view the evidence presented in the light most favorable to the hearing officer's decision." *See id.* Accordingly, we do "not reweigh the evidence" nor do we "substitute [our] judgment for that of the administrative factfinder." *Id.*

{8} The County presented evidence of misconduct by Harrison that could warrant demotion or dismissal. However, evidence was also presented to refute the County's claims and to suggest that less severe disciplinary measures would be appropriate. *See Tapia,* 104 N.M. at 120, 717 P.2d at 96 (appellate court may not reweigh evidence or substitute its judgment for that of fact finder); *see also Hernandez v. Mead Foods, Inc.,* 104 N.M. 67, 71, 716 P.2d 645, 649 (Ct.App. 1986) ("The question is not whether substantial evidence would have supported an opposite result; it is whether such evidence supports the result reached."). We cannot say as a matter of law that the evidence considered by the hearing officer supports only the outcome the County desires.

### A. Threat Of A Guard Walkout

{9} In the Notice of Intent To Dismiss, the Pre–Disciplinary Hearing Decision, and at the post-disciplinary grievance hearing, the County maintained that Harrison's abusive management style created the risk of a guard walkout. A number of witnesses testified that Harrison was verbally abusive to his employees and that Harrison's behavior created the risk of a guard walkout. However, other testimony indicated that Harrison did not behave in an unprofessional, abusive manner, and that the threat of a total guard walkout was minimal. The hearing officer's findings can be read to say that although Harrison's management style was deficient, he should not be held responsible for the alleged threat of a guard walkout. We cannot say that these findings are unsupported by the record.

### B. Treatment Of Inmate Morales

{10} There was a similar conflict in evidence regarding the treatment of inmate

Morales. The county manager was critical of Harrison's treatment of Morales and of Harrison's failure to take action when Morales' mental condition became apparent. However, a number of witnesses testified that Harrison's treatment of Morales was a proper response to the danger that Morales' conduct posed to herself, other inmates, and jail personnel. In addition, there was testimony that Harrison made repeated attempts to obtain suitable treatment for Morales with no success. Other testimony suggested that no one took action to have Morales properly evaluated and treated even though the district attorney's office, Morales' attorney, and the magistrate and district courts could have, and perhaps should have, addressed Morales' situation. While the hearing officer's findings reflect concern about the lack of prompt treatment for Morales, they also indicate he did not believe Morales was treated improperly by Harrison under the circumstances. The hearing officer placed much of the blame for Morales' situation on her own attorneys, the district attorney's office, and the judicial system. We cannot say these findings are unsupported by the record.

### C. Access To The Upstairs Fire Exit

{11} Evidence was also presented suggesting that Harrison endangered inmates and jail personnel by unreasonably restricting access to the key for the upstairs jail fire exit. However, other evidence tended to show that Harrison was attempting to implement standardized procedures to reduce the risk of jail escapes. Other testimony suggested that Harrison's key policy did not create a significant fire hazard. In addition, the hearing officer's findings rely on evidence that Harrison was not aware that the County disagreed with his policy until after he was placed on administrative leave, and that he would have rescinded the policy if he had been instructed to do so.

### D. The County's System of Progressive Discipline

{12} Under the County's system of progressive discipline, an employee may only be disciplined for just cause. Section 7.1(B) of the Personnel Ordinance defines just cause as:

> any conduct, action or inaction arising from, or directly connected with, the employee's work which is inconsistent with the employee's obligation to the county and reflects the employee's disregard of the county's interest. Just cause includes, but is not limited to, inefficiency, incompetency, misconduct, negligence, insubordination, performance which continues to be inadequate after reasonable efforts have been made to correct the performance problems, or conviction of a felony or misdemeanor as described in NMSA 1978, 28–2–1, *et seq.*

In addition, Section 7.2 of the Personnel Ordinance provides a number of examples of employee misconduct or substandard work performance that would warrant a verbal reprimand, written reprimand, ten-day suspension without pay, demotion, or dismissal.

{13} To the extent the County suggests that the hearing officer improperly focused on the County's ability to prove specific instances of misconduct as opposed to the existence of just cause, we disagree. While the existence of just cause may be the general inquiry of any grievance hearing, determining whether just cause exists necessarily requires the hearing officer to examine the specific instances of alleged misconduct relied upon to impose discipline.

### III. THE HEARING OFFICER EXCEEDED THE SCOPE OF HIS AUTHORITY

{14} Section 7.2 of the Personnel Ordinance creates a system of progressive discipline. Within that system, an employee may be sanctioned by verbal reprimand, written reprimand, suspension, demotion, or dismissal. Section 2.32 of the Personnel Ordinance defines "suspension" as "[a]n enforced leave of absence without pay, not to exceed 10 working days, for disciplinary reasons, or pending determination of the grievance procedure." Section 7.2(C) also states that "suspension will not exceed ten (10) working days." The County maintains that by ordering Harrison's reinstatement subject to a fourteen-week denial of pay, the hearing

officer in effect ordered a fourteen-week suspension without pay. While acknowledging that the hearing officer had the authority to modify the county manager's decision to terminate Harrison, the County contends that the hearing officer's options were limited to the disciplinary measures contained within the Personnel Ordinance. Thus, the County argues that the hearing officer exceeded the scope of his authority by imposing a fourteen-week suspension without pay that was not authorized by the Personnel Ordinance's system of progressive discipline.

{15} In contrast, Harrison points out that while the Personnel Ordinance authorizes the hearing officer to modify the county manager's decision, the Personnel Ordinance does not specifically limit the hearing officer to the options available under the County's progressive discipline scheme.

{16} While it is accurate that the Personnel Ordinance does not explicitly state that the hearing officer's authority to modify the county manager's decision is limited by the Personnel Ordinance's progressive discipline options, we do not believe the hearing officer has unfettered authority to impose disciplinary sanctions. The hearing officer acts in an administrative capacity within the Personnel Ordinance's grievance system to resolve employee grievances. *See Tapia,* 104 N.M. at 120, 717 P.2d at 96 (recognizing administrative nature of personnel hearing officer decisions). Accordingly, the hearing officer can act only within the scope of his authority as prescribed by the Personnel Ordinance. *See Public Serv. Co. v. New Mexico Envtl. Improvement Bd.,* 89 N.M. 223, 226, 549 P.2d 638, 641 (Ct.App.1976) (as creatures of statute, administrative bodies have no common law or inherent powers and can act only within the scope of the authority delegated to them). In this case the hearing officer fashioned a resolution which was contrary to the express provisions in the Personnel Ordinance limiting suspensions without pay to ten days. We fail to see how the hearing officer could have the authority to impose a disciplinary sanction that the County itself could never impose under the express terms of the Personnel Ordinance.

{17} Harrison relies on *State ex rel. New Mexico State Highway Dep't v. Silva,* 98 N.M. 549, 650 P.2d 833 (Ct.App.1982), to suggest that the hearing officer did not exceed the scope of his authority. However, Harrison's reliance on *Silva* is misplaced. In *Silva,* the personnel grievance board was specifically authorized by statute to award back pay from the date of the dismissal or such later date as the board may specify. 98 N.M. at 551, 650 P.2d at 835. In contrast, the Personnel Ordinance in this case does not provide the hearing officer with such authority. We therefore hold that the hearing officer was only authorized to: (1) uphold the termination; or (2) reverse the termination and order reinstatement with full back pay or with a suspension not to exceed ten days; or (3) otherwise modify the county manager's decision within the scope of the disciplinary sanctions authorized by the Personnel Ordinance's progressive discipline system, including reinstatement with a demotion, a suspension, or both. The hearing officer exceeded his authority under the Personnel Ordinance in denying Harrison's request for back pay.

{18} The County argues that the hearing officer's error with respect to back pay invalidates his entire decision and requires reconsideration of whether to uphold Harrison's termination. We disagree. The hearing officer's error does not call into question the validity of his decision to reinstate Harrison. The conclusion that Harrison must be reinstated is supported by the hearing officer's finding that the County "failed to establish the several charges of misconduct with respect to Mr. Harrison[,]" and this finding is supported by substantial evidence. The only question raised by the error with respect to back pay is which of the disciplinary sanctions other than termination the hearing officer would have chosen if he had known he was limited to those set forth in Section 7.2 of the Personnel Ordinance. Thus, we remand this matter for the limited purpose of determining whether to impose any of the disciplinary sanctions other than termination that are available under Section 7.2 of the Personnel Ordinance based on the record that already exists in this case.

## IV. CONCLUSION

{19} We affirm the district court's judgment upholding the decision of the hearing officer to reinstate Harrison to employment. We reverse and remand for reconsideration, in light of this Opinion, of other discipline which may be appropriate.

{20} **IT IS SO ORDERED.**

DONNELLY and ARMIJO, JJ., concur.