902 P.2d 1051

Jerry D. **CLAYTON** and Thriftway Marketing Corporation, Petitioners–Appellants,

v.

The **FARMINGTON CITY COUNCIL**, and its individual members, Blaine Atkinson, Larry Brewer, Mary Fischer, and Dr. William Hall, Respondents–Appellees.

No. 15651.

Court of Appeals of New Mexico.

June 26, 1995.

Certiorari Denied Aug. 14, 1995.

---

John F. Dietz, John F. Dietz, P.C., Durango, CO, Robert D. Benson, Benson & Associates, Farmington, for petitioners-appellants.

Randolph M. Toth, Ass't City Att'y, Farmington, for respondents-appellees.

## OPINION

BUSTAMANTE, Judge.

Jerry D. Clayton (Clayton) and Thriftway Marketing Corporation (Thriftway) requested direct curb access to Piñon Hills Boulevard in the City of Farmington (the City) to aid in the development of a convenience store and gasoline outlet. The Farmington City Council (the Council) denied the requested access. Clayton and Thriftway appealed the Council's action to the district court pursuant to NMSA 1978, Section 3–19–8(A) (Repl. 1985). The district court affirmed the Council's decision and Clayton and Thriftway appeal. We address three issues: (1) Did the district court apply the proper standard of review under Section 3–19–8(C)? In connection with this issue, we also examine the standard of review to be applied on appeal. (2) Is the district court's decision supported by substantial evidence? (3) Are the district court's findings of fact and conclusions of law sufficient as a matter of law? We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The City initially adopted a major thoroughfare plan in 1977, and has amended it a number of times since then. As part of the plan, the City identified an east/west street designed to ease traffic flow between East Main Street (U.S. Highway 550) and La Plata Highway. Since 1981, the street has been designated a limited access major arterial with curb access limited to 600 foot intervals and median crossings limited to 1,320 foot intervals. The street was eventually named Piñon Hills Boulevard.

In August 1981, the City approved the Foothills Estates Subdivision (the subdivision). The subdivision abuts Piñon Hills Boulevard on the north but was approved with a restriction of no direct access to Piñon Hills Boulevard. The subdivision included only one lot zoned for commercial use (the property). The primary street serving the subdivision, Foothills Drive, was originally proposed to intersect directly with East Main Street. The Piñon Hills Boulevard—East Main Street intersection is approximately 600 feet away from the property, just in compliance with the limited access standards of the City's major thoroughfare plan.

Clayton is the president of Thriftway, which owns and operates numerous convenience stores throughout New Mexico. Clayton acquired the property in October of 1981, intending to use it for a convenience store. At the time of the acquisition, Clayton knew the property was not approved for direct access to Piñon Hills Boulevard. However, he was also aware that it was 600 feet from East Main Street and, therefore, believed it was eligible for direct access under the City's major thoroughfare guidelines. In late 1991, Clayton and Thriftway filed a request with

the City's Community Services Division for: (1) access to the property from Piñon Hills Boulevard; (2) a median crossing on Piñon Hills Boulevard for the property; and (3) access to the property from Foothills Drive. The request was denominated Petition No. 1144.

At the time of Clayton and Thriftway's access request, no construction activities had started on Piñon Hills Boulevard adjacent to the property. In addition, no construction work had started on the realignment of Foothills Drive. The City started construction of Piñon Hills Boulevard in 1992, and those portions affecting the property are now complete. The construction resulted in a realignment of Foothills Drive. Rather than intersecting it with East Main Street, the City intersected Foothills Drive directly with Piñon Hills Boulevard adjacent to the property. The final alignment of Foothills Drive had two effects. The intersection of Foothills Drive and Piñon Hills Boulevard is less than 600 feet from the Piñon Hills Boulevard—East Main Street intersection. Additionally, the property is now a roughly triangular peninsula with Foothills Drive on one side and Piñon Hills Boulevard on the other. Below is a diagram depicting the relative location of the property and the streets it abuts.

Petition 1144 was the subject of three public hearings; two before the Planning and Zoning Commission of the City and one before the Council. The Planning and Zoning Commission voted 5 to 1 to deny Clayton and Thriftway's petition for access. Pursuant to Section 2–49 of the Farmington City Code, the Planning and Zoning Commission is an advisory body to the Council. Final decisions concerning planning, platting and zoning are made by the Council. Clayton and Thriftway presented Petition 1144 to the Council on April 28, 1992. Clayton appeared

at the Council meeting personally and was also represented by an attorney. Prior to the meeting, Council members received an agenda packet which included correspondence from Clayton and Thriftway's agents and attorneys, a diagram showing the access requested, a diagram showing the property in relation to the City, and draft minutes from the Planning and Zoning Commission meetings. The Council denied Clayton and Thriftway's request for access to Piñon Hills Boulevard and for the median crossing, but granted access as requested to Foothills Drive.

Clayton and Thriftway filed a petition for writ of certiorari and petition for review with the district court on May 22, 1992. The parties stipulated in a pre-trial order that Section 3–19–8 provided the basis for the district court's jurisdiction and that the court would conduct a *de novo* review of the Council's action pursuant to Section 3–19–8(C). The district court held a two and one-half day evidentiary hearing commencing June 2, 1993. Clayton and Thriftway called as witnesses certain employees of the City, all the members of the Council who voted on the proposal, the chair of the Planning and Zoning Commission, certain employees of Thriftway, and a traffic engineering and planning expert. The City employees generally testified concerning the history of the City's comprehensive plan and the major thoroughfare plan, the planning process for Piñon Hills Boulevard and Foothills Drive, current and planned access points to Piñon Hills, and the rationale behind the City's opposition to Clayton and Thriftway's request for access. The City opposed access on traffic flow and safety grounds.

The members of the Council testified concerning their background and experience with the City and city government. They explained their respective reasons for voting to deny Clayton and Thriftway's request for access. Each of them was primarily concerned with the safety implications of allowing direct access from a parking lot to a high-volume thoroughfare. The Council members testified they received a prepared agenda package a few days prior to the actual meeting and that they reviewed the package prior to the meeting. A majority of the Council members stated they visited the property prior to the meeting. All of the Council members acknowledged they had available to them copies of the minutes from the Planning and Zoning Commission meeting and the various City department recommendations prior to the Council meeting.

Nancy Eaves, the Planning and Zoning Commission chair, testified she voted against the requested access primarily because of the safety concerns raised by allowing direct access to a high volume arterial street. Mrs. Eaves was questioned concerning a potential conflict of interest she had, in that she and her husband worked for a realty company which had a real estate listing located across the street from the property. Mrs. Eaves admitted that she had suggested during a Commission meeting, perhaps in jest, perhaps not, that Clayton and Thriftway purchase the land across the street for their convenience store. In addition, Mrs. Eaves acknowledged that, prior to the Council meeting, she spoke with the mayor and told him she would resign from the Planning and Zoning Commission if the Council voted to overturn the Commission's recommendation. However, the Council members testified they had not spoken directly with Mrs. Eaves prior to the Council meeting, and were not aware of any threat by her to resign.

Clayton and another employee of Thriftway testified the property could not reasonably be used as a convenience store without the requested access to Piñon Hills Boulevard. The expert witness presented by Clayton and Thriftway generally testified concerning the feasibility of allowing access to Piñon Hills Boulevard as requested by them. The expert witness testified about various approaches available to enhance the feasibility and safety of direct access.

The parties stipulated prior to trial that as presently constructed there are nine approved access points to Piñon Hills Boulevard between East Main Street and Butler Avenue. Of these nine access points, four do not meet the access distance requirements of the major thoroughfare plan. These four access points were designed to accommodate access to longstanding owners and users of

property along Piñon Hills Boulevard. Without access, these owners would have been landlocked.

After trial, the district court concluded that: (1) the City's denial of Petition 1144 was consistent with the limited access intended for Piñon Hills Boulevard; (2) the legislative hearings before the Planning and Zoning Commission and the Council afforded a fair process as required by Sections 3–19–1 to – 12; and (3) the City's denial of the request for direct access to Piñon Hills Boulevard was both lawful and reasonable.

### STANDARD OF REVIEW

Section 3–19–8 has not been interpreted by the New Mexico appellate courts. The parties cite only one case which has dealt with this section, and our own research has revealed no others. *See Ramirez v. City of Santa Fe,* 115 N.M. 417, 418–19, 852 P.2d 690, 691–92 (Ct.App.1993). In *Ramirez,* we remanded to the district court for further proceedings and determined that interpretation of Section 3–19–8 was premature in the procedural and factual context of that case. *Id.* at 419, 852 P.2d at 692. We thus address an issue of first impression.

■ Normally, one of our first tasks is to determine the standard of review we should apply in examining district court judgments. *See Watson v. Town Council of Bernalillo,* 111 N.M. 374, 376, 805 P.2d 641, 643 (Ct.App.1991) (noting it is necessary for a reviewing court to establish the standard of its review). In this case, determining the appellate standard of review is not as straightforward as it may seem at first blush. The appellate standard of review depends on the nature of the review undertaken by the district court. *Compare Groendyke Transp., Inc. v. New Mexico State Corp. Comm'n,* 101 N.M. 470, 476–77, 684 P.2d 1135, 1141–42 (1984) *with Green v. Kase,* 113 N.M. 76, 77, 823 P.2d 318, 319 (1992). When reviewing most administrative decisions, the district court and appellate court examination is limited to assessing, in light of the whole record, whether the agency acted arbitrarily or capriciously, whether the agency decision was supported by substantial evidence, and whether the agency acted within the scope of its authority. *Tapia v. City of Albuquerque,*

104 N.M. 117, 120, 717 P.2d 93, 96 (Ct.App. 1986); *Conwell v. City of Albuquerque,* 97 N.M. 136, 138, 637 P.2d 567, 569 (1981). In these cases, the appellate court conducts the same review of the administrative decision as the district court, and at the same time determines whether the district court erred in the first appeal. *See Rex, Inc. v. Manufactured Hous. Comm.,* 119, N.M. 500, 504, 892 P.2d. 947, 951 (1995); *Tapia,* 104 N.M. at 120, 717 P.2d at 96. The reviewing court generally may not substitute its judgment for that of the administrative decision maker, but it may correct any misapplication of the law. *See Mutz v. Municipal Boundary Comm'n,* 101 N.M. 694, 697, 688 P.2d 12, 15 (1984).

■ The two tier review process described above has not been applied, however, when the statute controlling appeal has allowed some form of *de novo* review by the initial reviewing court. By *de novo* review, we mean judicial review which at a minimum: (1) contemplates additional evidentiary presentation beyond the record created in front of the administrative agency, and (2) allows the district court more discretion in its judgment than simply reversal of the agency's decision and remand for further proceedings. *See Wheatley v. County of Lincoln,* 118 N.M. 745, 748, 887 P.2d 281, 284 (1994); *Green,* 113 N.M. at 78, 823 P.2d at 320; *Mata v. Montoya,* 91 N.M. 20, 21, 569 P.2d 946, 947 (1977); *In re Carlsbad Irrigation Dist.,* 87 N.M. 149, 150–51, 530 P.2d 943, 944–45 (1974); *Keller v. City of Albuquerque,* 85 N.M. 134, 137–38, 509 P.2d 1329, 1332–33 (1973), *overruled on other grounds, Green v. Kase,* 113 N.M. at 77–78, 823 P.2d at 319–20; *Farmers Development Co. v. Rayado Land & Irrigation Co.,* 18 N.M. 1, 133 P. 104 (1913), *overruled, Kelley v. Carlsbad Irrigation Dist.,* 71 N.M. 464, 467, 379 P.2d 763, 764 (1963).

New Mexico courts have sometimes given broad effect to statutes allowing *de novo* review. *See, e.g., Farmers,* 18 N.M. at 9, 133 P. at 106. The best description of pure *de novo* review of administration decisions in New Mexico is found in *In re Carlsbad Irrigation District,* 87 N.M. at 150–51, 530 P.2d at 944–45; *Keller,* 85 N.M. at 136–37, 509

P.2d at 1331–32; *Farmers*, 18 N.M. at 9, 133 P. at 106, *see also Southern Union Gas Co. v. Taylor*, 82 N.M. 670, 671, 486 P.2d 606, 607 (1971) (district court review of magistrate court decisions). These cases describe "trial *de novo*" as a trial anew in the sense that the first reviewing court considers the issues presented on its own, "not bound, controlled or necessarily influenced, in any way," by the action of the inferior tribunal. *Farmers*.

We undertake analysis of Section 3–19–8 in light of this model in order to: (1) assess whether the district court may accept new evidence on the appeal; (2) determine the nature of the review the district court will undertake of the City Council's decision; (3) assess the strength of the presumption of correctness the administrative agency decision carries during review; and (4) determine the nature of the remedy the district court may fashion. These issues almost of necessity overlap each other.

Section 3–19–8 provides:

A. Any person, in interest:

  (1) dissatisfied with any order or determination of the planning commission; and

  (2) after review of the order or determination by the governing body of the municipality may commence an action in the district court to vacate and set aside the order or determination on the ground that it is unlawful or unreasonable.

B. The court shall determine the issue from the evidence introduced, but the plaintiff has the burden of establishing a prima facie case. The court may grant relief by injunction, mandamus or any other extraordinary remedy. In any action the complaint shall be served with the summons. Appeal may be taken from the judgment as in other civil cases.

C. The trial shall be de novo and shall be governed by the rules of civil procedure of the district court.

D. Except as provided in this section, all processes shall be served and the practice and rules of evidence shall be the same as in civil action.

In analyzing the statute, we are mindful of the broad rules of statutory construction which require that we must apply the language of the statute in accord with its ordinary meaning so long as doing so does not do violence to the purpose of the act or lead to absurd results. *See Incorporated County of Los Alamos v. Johnson*, 108 N.M. 633, 634, 776 P.2d 1252, 1253 (1989); *Atencio v. Board of Educ.*, 99 N.M. 168, 171, 655 P.2d 1012, 1015 (1982) ("[W]e must ... give a statute its literal reading if the words used are plain and unambiguous, provided such a construction would not lead to an injustice, absurdity or contradiction."). In addition, we are aware we must attempt to achieve internal consistency. That is, we must strive to interpret the statute in such a way that no parts of it are rendered superfluous. *See State v. Dunsmore*, 119 N.M. 431, 433, 891 P.2d 572, 574 (Ct.App.1995); *Vaughn v. Taxation & Revenue Dep't*, 98 N.M. 362, 365–66, 648 P.2d 820, 823–24 (Ct.App.1982).

A number of ambiguities appear on the face of the statute. For example, Section 3–19–8(A)(2) allows appeal to "... the district court to vacate and set aside the order or determination on the ground that it is unlawful or unreasonable." This language implies a review by the district court which focuses on the standard inquiry described in *Groendyke*, 101 N.M. at 476, 684 P.2d at 1141. *See Mutz*, 101 N.M. at 697, 688 P.2d at 15. Other provisions of the statute imply broader review and perhaps a broader remedy. For example, Section 3–19–8(B) allows the court to grant relief by "injunction, mandamus or any other extraordinary remedy." This language seems to contemplate broader remedies than mere vacatur and remand. Additionally, Section 3–19–8(C) provides that the trial in the district court shall be "*de novo* and shall be governed by the rules of civil procedure of the district court." (Emphasis added). This language appears to allow, if not mandate, an entirely new evidentiary inquiry by the district court which could lead, again, to a remedy broader than mere reversal of Council action. Not all of these issues are ripe or appropriate for resolution in this matter. However, they combine to raise serious questions concerning the scope of review

to be applied by the district court in making its decision under Section 3–19–8.

■ The parties are in agreement that under Section 3–19–8(C) the district court was required to accept evidence beyond the administrative record, if offered by the parties. We accept the parties' view in light of the clear words of the statute providing that the proceeding in the district court is to be *de novo. See Rowley v. Murray*, 106 N.M. 676, 679, 748 P.2d 973, 976 (Ct.App.) (absent specific statute to the contrary, administrative review is based solely on the record of the administrative hearing), *cert. denied*, 106 N.M. 627, 747 P.2d 922 (1987). Acceptance of new evidence is an important facet of *de novo* review but it is not the whole of the concept.

■ We do not believe Section 3–19–8 contemplates pure *de novo* review by the district court despite the use of the term in Section 3–19–8(C). To so hold would excise subsection (A) from the statute, and that we cannot do. Giving effect to both subsection (A) and (C), we conclude that the statute as a whole provides the district court more discretion in deciding issues than is inherent under the arbitrary and capricious standard. The district court is not required to defer to Council decisions to the same extent it would under the arbitrary and capricious standard. That is, the court is not required to indulge every inference in favor of the Council's action. On the contrary, the district court is required to exercise its own judgment in light of the Council decision and the evidence presented to the court at trial. Sensitively exercised, this balancing of deference and independence will best achieve the statute's directive to assess the lawfulness and reasonableness of Council action after a *de novo* evidentiary hearing. At the conclusion of the evidentiary hearing, the court has the power and discretion to order approval of a request such as Petition 1144, rather than merely vacating the agency decision and remanding for further proceedings. It is not necessary to determine precisely the extent of that discretion for purposes of our discussion here.

■ It is enough at this point to say that Section 3–19–8 allows a sufficiently broad

brand of review by the district court that the standard of review on appeal to this Court should be whether the district court's judgment is supported by substantial evidence. In addition, the appellate court, of course, always reviews for errors of law. In the context of this case, the issues of law include the district court's application of the scope of review applicable to its appeal. This is the context in which we will review the judgment below. *See McCauley v. Ray*, 80 N.M. 171, 174, 453 P.2d 192, 195 (1968); *Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 89, 428 P.2d 625, 628 (1967). We will not apply the two-tier, whole record review described in *Watson*, 111 N.M. at 376–77, 805 P.2d at 643–44.

We note that we have not adopted either party's interpretation of Section 3–19–8 *in toto.* Clayton and Thriftway assert the statute gives the district court unfettered discretion to not only overturn Council decisions, but to impose on the City its own resolution of planning and platting issues. The City asserts the court may only review whether the Council's decision is arbitrary or unlawful and may only vacate and remand to the Council with no power to require the City to take any particular action except rehear the request. We do not believe either extreme accurately describes the district court's duties and powers under Section 3–19–8. However, under the factual posture of this case, where the court has done nothing more than uphold Council action, we decline to consider what might be the outer limits of district court discretion under the statute. *See Ramirez*, 115 N.M. at 418, 852 P.2d at 691 (declining to address certain issues because appellate courts do not issue advisory opinions).

### THE DISTRICT COURT HEARING

■ As already noted, after a two and one-half day evidentiary hearing, the district court entered conclusions of law generally upholding the Council's decision. The district court's conclusion number four states: "The City's denial of Petition No. 1144 ... was both lawful and reasonable." Clayton and Thriftway seize on this language to argue that the court must have failed to "independently consider the propriety of the ac-

tions of the Committee and the Council...." Clayton and Thriftway argue that use of the phrases "lawful and reasonable" and "upheld and affirm" are fundamentally at odds with the notion of a trial *de novo* as described by the Supreme Court.

We disagree. There is no inconsistency between conducting a *de novo* review and deciding at the conclusion of the review that the agency's decision was correct and should not be disturbed. The premise underlying Appellants' argument is that on *de novo* review, the court should not accord any deference to the agency's actions. Under the model for pure *de novo* review described in *Farmers* and *Southern Union Gas*, we agree with the premise for purposes of argument, even though, as we have already discussed above, it probably is not fully applicable to this statute. We do not agree, however, that Appellants may expect a result which overturns, or is contrary to, the Council's action. Clayton and Thriftway's position amounts to little more than an assertion that on *de novo* review the court is bound to find error if it truly considers the propriety of the Council's acts independently. The Appellants' position is similar to the position taken by the appellant in *In re Carlsbad Irrigation District*. The Supreme Court there rejected the argument and we see no reason not to do so here. To paraphrase *In re Carlsbad Irrigation District*, there is certainly nothing in the transcript of the hearings below which would indicate or cause us concern that the district court in this case did not appropriately apply Section 3–19–8.

### SUBSTANTIAL EVIDENCE

■■■ Clayton and Thriftway restate their arguments that (1) the decision of the Council to deny access was arbitrary because other landowners have been granted access in violation of the interval standards; and (2) they were denied due process because of a potential conflict of interest of the Planning and Zoning Commission chair. At trial, Appellants made these same arguments, on the same evidence, to the district court. In addition, Appellants filed extensive and detailed requested findings of fact and conclusions of law concerning their contentions. Obviously, the district court disagreed with their posi-

tion. Unless the district court is wrong as a matter of law, the issue on appeal is whether the court's decision is supported by substantial evidence. *See High Ridge Hinkle Joint Venture v. City of Albuquerque,* 119 N.M. 29, 38, 888 P.2d 475, 484 (Ct.App.) ("The substantial-evidence standard ... [is] used to review factual findings, not questions of law."), *certs. denied,* 119 N.M. 20, 888 P.2d 466 (1994).

■■■ We find no error of law in the court's decision on either argument. Simply because the City has allowed access to other landowners does not by itself make the City's decision arbitrary as a matter of law. Non-uniform enforcement of a statute is not necessarily a denial of equal protection, arbitrary, otherwise illegal, or even reprehensible. *See Mandel v. City of Santa Fe,* 119 N.M. 685, 689, 894 P.2d 1041, 1044 (App. 1995); *State ex rel. Bingaman v. Valley Sav. and Loan Ass'n,* 97 N.M. 8, 9 n. 2, 636 P.2d 279, 280 n. 2 (1981). Similarly, the potential conflict of interest of the Planning and Zoning Commission chair does not require a finding of denial of due process as a matter of law. The Planning and Zoning Commission is an advisory body to the Council. The Commission chair did vote at the Commission meetings. However, the Council made the final decision with no input from the Planning and Zoning Commission, except its 5–1 negative recommendation. The person with the asserted conflict of interest was not the decision-maker. Thus, *Reid v. New Mexico Board of Examiners,* 92 N.M. 414, 416, 589 P.2d 198, 200 (1979), does not require a finding of a denial of due process.

On a factual level, there is ample evidence to support the district court. With regard to the conflict of interest issue, the Council members testified they were not aware before their vote of any potential conflict, nor of any threat by the chair to resign. In fact, all the Council members stated they spoke with no one prior to the meeting, except constituents, and they voted based on their best judgment of the problem.

The record with regard to the access given other landowners is equally, if not more, compelling. The evidence essentially is that construction of Piñon Hills Boulevard elimi-

nated prior existing street access to the landowners. Refusing these landowners access to Piñon Hills Boulevard would effectively landlock them. Allowing access in this situation is clearly reasonable, but does not compel the City to allow access where none had existed before. Similarly, the nonconforming street intersections were largely related to alignment problems caused by natural terrain and topography. This evidence is sufficient to support the court's decision. *See Viking Petroleum, Inc. v. Oil Conservation Comm'n,* 100 N.M. 451, 453, 672 P.2d 280, 282 (1983) ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Rinker v. State Corp. Comm'n,* 84 N.M. 626, 627, 506 P.2d 783, 784 (1973).

## SUFFICIENCY OF COURT'S FINDINGS AND CONCLUSIONS

Appellants finally argue that the district court's findings of fact and conclusions of law are deficient as a matter of law. Appellants contend the findings of fact and conclusions of law are so conclusory in nature that Appellants have been denied the right of meaningful appellate review. We find Appellants' contentions lack merit. The district court is allowed, if not required, to find the ultimate facts. Evidentiary facts are not required of the district court. *See Marcus v. Cortese,* 98 N.M. 414, 415, 649 P.2d 482, 483 (Ct.App.1982). On appeal, the reviewing court liberally construes the findings of fact adopted by the fact finder in support of a judgment, and such findings are proper if a fair consideration of all the findings taken together supports the lower court's judgment. *See Toynbee v. Mimbres Memorial Nursing Home,* 114 N.M. 23, 29, 833 P.2d 1204, 1210 (Ct.App.1992). The district court's findings of fact and conclusions of law are sufficient to support the judgment. *See McCleskey v. N.C. Ribble Co.,* 80 N.M. 345, 346, 455 P.2d 849, 850 (Ct.App.), *cert. denied,* 80 N.M. 317, 454 P.2d 974 (1969). In the context of the record, the court's findings of fact and conclusions of law are adequate to allow for meaningful appellate review. That is all that is required.

The district court's judgment is affirmed.

**IT IS SO ORDERED.**

ALARID and PICKARD, JJ., concur.