2001 NMCA 103

37 P.3d 100

**SANTA FE PUBLIC SCHOOLS,**
Respondent–Appellant,

v.

**Rodney ROMERO, Petitioner–Appellee.**

No. 20,452.

Court of Appeals of New Mexico.

Oct. 18, 2001.

Eleanor K. Bratton, Michael L. Carrico, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, NM, for Respondent–Appellant.

Mary L. Marlowe, The Marlowe Law Firm, P.C., Santa Fe, NM, for Petitioner–Appellee.

John F. Kennedy, Naomi J. Barnes, Cuddy, Kennedy, Hetherington, Albetta & Ives, L.L.P., Santa Fe, NM, for Amicus Curiae New Mexico School Boards Association.

K. Lee Peifer, Justin Lesky; Law Offices of K. Lee Peifer, Albuquerque, NM, for Amicus Curiae American Federation of Teachers.

Jerry Todd Wertheim, John V. Wertheim, Jones, Snead, Wertheim, Wentworth & Jaramillo, Santa Fe, NM, for Amicus Curiae National Education Association–New Mexico.

Debra J. Moulton, Kennedy, Moulton & Wells, P.C., Albuquerque, NM, for Amicus Curiae New Mexico Coalition of School Administrators.

## OPINION

FRY, Judge.

{1} In this opinion we clarify the standard of review employed by an independent arbitrator reviewing a school board's discharge of a certified school employee. Because the arbitrator failed to use the correct standard of review, we remand for a new arbitration. Because the arbitrator was dilatory in his handling of the case, the new arbitration should be before a different arbitrator.

## BACKGROUND

{2} This case arises from the Santa Fe School Board's discharge of coach Rodney Romero on grounds of sexual misconduct with a female student. Although the focus of our decision is the procedure employed below, we briefly summarize the evidence in order to provide context.

{3} During the 1995–96 school year, Romero was employed by the Santa Fe Public Schools as the head wrestling coach at Capital High School. Toward the end of the first semester of that school year, tenth grader Nicole S. joined the wrestling team coached by Romero. Although her grades made her ineligible to compete, Nicole participated in practices and attended some tournaments as team manager or in other unofficial capacities.

{4} In April 1996 John Gallegos, a school social worker, became concerned about Nicole's apparent depression, increasing withdrawal, and school failure. He referred Nicole for participation in a study of adolescents at risk for suicide. In the course of being interviewed by a psychologist for this study, Nicole revealed that a teacher had touched her inappropriately. The psychologist encouraged Nicole to discuss the matter with Gallegos, and the psychologist also notified Gallegos that Nicole might be approaching him to discuss an incident of sexual abuse.

{5} Gallegos called Nicole into his office and asked her directly if she had been molested by someone at school. Nicole was extremely angry that the psychologist had violated her confidence. However, in a subsequent discussion with Gallegos and the school's assistant principal, Hoyt Mutz, Ni-

cole made further allegations of sexual misconduct and named Romero as the perpetrator. Mutz then contacted Vickie Sewing, Director of Personnel for Santa Fe Public Schools. Sewing told Mutz to report the matter to Nicole's parents and to the police. Sewing then advised Romero of the allegations against him and placed him on administrative leave pending an investigation.

{6} Sewing conducted an investigation into the matter. She interviewed Gallegos and the officer investigating the incident for the Santa Fe Police Department. She interviewed Nicole and learned more details about the alleged misconduct that occurred in the context of the coach/athlete relationship between Romero and Nicole. She also interviewed Romero.

{7} Sewing considered the matter over the summer and ultimately recommended that Romero be discharged. The Superintendent accepted Sewing's recommendation and served Romero with a notice of intent to discharge. Romero requested a hearing before the School Board. At the hearing, consistent with NMSA 1978, § 22–10–17(H) (1991), the parties presented witness testimony and documentary evidence. The Board found that good cause existed to discharge Romero and terminated him.

{8} Romero timely appealed the discharge. Pursuant to Sections 22–10–17.1(B) and (C), the district court appointed James E. Thomson as an independent arbitrator to hear the appeal. At the arbitration, the parties submitted the record from the Board hearing and presented the live testimony of Romero and Sewing. The arbitration concluded on August 25, 1997, but it was not until twenty months later that the arbitrator issued his decision.

{9} The arbitrator concluded that the charges against Romero should be dismissed. Although the arbitrator's findings supporting his conclusion are ambiguous, we conclude that the transcript of the arbitration hearing establishes that the arbitrator employed an erroneous standard of review. Instead of reviewing the evidence de novo and making his own determination whether there was just cause to discharge Romero, the arbitrator focused on the adequacy of Sewing's in-

vestigatory technique. Because we cannot determine from this record how the arbitrator would have decided the case if he had employed the correct standard of review, we reverse and remand for a new arbitration.

## DISCUSSION

### I. Standard of Review

{10} We interpret statutes de novo. *See Romero Excavation & Trucking, Inc. v. Bradley Constr., Inc.*, 1996–NMSC–010, ¶ 6, 121 N.M. 471, 913 P.2d 659. Our principal objective in interpreting a statute is to determine the intent of the legislature. *Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998–NMSC–020, ¶ 28, 125 N.M. 401, 962 P.2d 1236. We construe the statute as a whole and consider all provisions in relation to one another. *N.M. Pharm. Ass'n, v. State*, 106 N.M. 73, 75, 738 P.2d 1318, 1320 (1987). No part of the statute should be rendered surplusage or superfluous. *In re Rehab. of W. Investors Life Ins. Co.*, 100 N.M. 370, 373, 671 P.2d 31, 34 (1983).

### II. Discharge Procedures Under the School Personnel Act

{11} The School Personnel Act, NMSA 1978, §§ 22–10–1 to –27 (1967, as amended through 1998), sets out the procedures governing the termination or discharge of various school employees. The parties do not dispute that Romero was a "certified school employee." Because the Board severed its employment relationship with Romero before his current annual contract had expired, Section 22–10–2(A) makes it clear that the discharge provisions of the Act—Sections 22–10–17 and –17.1—as opposed to the termination provisions—Sections 22–10–14 and –14.1—apply.

{12} A school board may discharge a certified school employee only for just cause. Section 22–10–17(A). " '[J]ust cause' means a reason that is rationally related to an employee's competence or turpitude or the proper performance of his duties and that is not in violation of the employee's civil or constitutional rights." Section 22–10–2(F). Discharge proceedings begin when the superintendent serves the

employee with written notice of the intent to recommend discharge, stating the reasons for the recommendation and advising the employee of the right to a discharge hearing before the school board. Section 22–10–17(A)(1), (2). If the employee exercises his right to a hearing, the parties may undertake discovery and subpoena witnesses and documents. Sections 22–10–17(E) and (F). The local superintendent or administrator "[has] the burden of proving by a preponderance of the evidence that, at the time of the notice of intent to recommend discharge, he had just cause to discharge the certified school employee." Section 22–10–17(G).

{13} If the employee is aggrieved by the decision of the school board, he may appeal the decision to an independent arbitrator. Section 22–10–17.1(A). The statute explicitly requires a de novo hearing, and the parties may conduct discovery prior to the hearing. Sections 22–10–17.1(D), (G). "[T]he independent arbitrator shall permit either party to call and examine witnesses, cross-examine witnesses and introduce exhibits." Section 22–10–17.1(I).

### III. Statutory Standard to be Employed by Arbitrator

{14} The error in this case was rooted in the arbitrator's interpretation of the statute governing appeals from a school board's decision to discharge a certified school employee. That statute states:

> Appeals from the decision of the local school board or governing authority shall be decided after a de novo hearing before the independent arbitrator. The local school board or governing authority shall have the burden of proving by a preponderance of the evidence that, *at the time of the notice of intent to recommend discharge, the local superintendent or administrator had just cause to discharge the certified school employee.*

Section 22–10–17.1(D) (emphasis added). It is the emphasized language that proved most troubling to the parties and the arbitrator.

{15} The Board argues that the arbitrator used the wrong standard of review, and that the arbitrator should have asked whether "Sewing's subjective belief that good cause existed to terminate Romero was objectively reasonable." Romero, on the other hand, argues that the arbitrator employed the correct standard of review in concluding that Sewing's investigation was incomplete and biased, and that as a result, "[t]he overwhelming evidence available to Ms. Sewing, at the time she recommended discharge did not support her belief in Nicole's story."

{16} Although the parties claim differing views of the arbitrator's role, it is apparent that they agree on two underlying premises: (1) the arbitrator was to focus his review on the investigation of the administrator who recommended discharge, and (2) the arbitrator was to limit his review to the evidence that was available to the administrator at the time she recommended discharge. Our analysis of the relevant statutes leads us to conclude that both of these basic assumptions are wrong. We hold that the arbitrator must review all the evidence relevant to the charges set forth in the notice of intent to discharge, including relevant evidence discovered after the notice has been served, and decide on that record whether the Board has established by a preponderance of the evidence that the allegations of misconduct had a basis in fact and whether they constitute just cause supporting discharge.

{17} The structure of Section 17.1D argues strongly against the argument that the legislature intended that the focus of the arbitrator's review be solely on the mind of the administrator. Instead, the statute requires the reviewing entity—whether the school board conducting a pre-discharge review or an arbitrator reviewing the board's decision—to determine whether the alleged misconduct actually occurred and constitutes just cause for discharge. The reviewing entity decides whether the acts that led to the decision to discharge happened, *not* whether the employer had reasonable grounds for believing they happened.

{18} This view of the statute is the most reasonable view, given the statute's directive that the employer, after conducting discovery, presenting evidence, and examining and

cross-examining witnesses, Section 22–10–17.1(G), (I), "shall have the burden of proving by a preponderance of the evidence that … [the] administrator had just cause to discharge the certified school employee." Section 22–10–17.1(D). *See also* Section 22–10–17(G) (employing the same standard for school board review of an administrator's action). Proving a fact by a preponderance of the evidence "means to establish that something is more likely true than not true." UJI 13–304 NMRA 2001. Thus, the school board must prove to the arbitrator that there was a reason for recommending discharge that amounted to just cause—"a reason that is rationally related to an employee's competence or turpitude or the proper performance of his duties…." Section 22–10–2(F).

■ {19} The statute's requirement for de novo review supports our conclusion. De novo review means "judicial review which at a minimum: (1) contemplates additional evidentiary presentation beyond the record created in front of the administrative agency, and (2) allows the [reviewing entity] more discretion in its judgment than simply reversal of the agency's decision and remand for further proceedings." *Clayton v. Farmington City Council*, 120 N.M. 448, 453, 902 P.2d 1051, 1056 (Ct.App.1995). Permitting the presentation of additional evidence at the review hearings makes sense only if it is meant to inform the ultimate decision of whether just cause *actually* exists.

{20} This leads us to the second of the parties' erroneous assumptions—that the arbitrator could focus only on the evidence available to the administrator at the time she recommended discharge. If the arbitrator's role were so restricted, the arbitrator could not consider any evidence that came to light after the notice recommending discharge, even if such evidence established that the charges against the employee were baseless. This interpretation of the statute could lead to an unjust result, and it is therefore unsupportable. *United Water N.M., Inc. v. N.M. Pub. Util. Comm'n*, 121 N.M. 272, 276, 910 P.2d 906, 910 (1996) (stating that statutory interpretation "must not render the statute[s'] application absurd, unreasonable, or unjust") (internal quotation marks and citation omitted).

{21} Our interpretation of the statute is consistent with *In re Termination of Kibbe*, 2000–NMSC–006, ¶ 14, 128 N.M. 629, 996 P.2d 419. Although that case focused on a different aspect of just cause, it is clear from the Supreme Court's analysis that the burden of the administrator or school board is to prove the actual existence of just cause. *Id.* ¶ 15. At issue in *Kibbe* was whether the conduct with which the teacher was charged was rationally related to the teacher's competence or turpitude, as required by Section 22–10–2(F). *Id.* ¶¶ 14–15. The Court noted that:

> the school board did not present evidence that Kibbe's arrest actually affected his ability to teach effectively or to serve as a proper role model for students; instead, the school board relied on [the administrator's] testimony about community sentiment and the importance of a teacher and coach providing a good example for students.

*Id.* ¶ 15. Thus, the relevant factor was "whether the DWI incident had an *actual* effect on Kibbe's ability to properly perform his duties." *Id.* (emphasis added). Similarly, the issue in the present case should have been whether Romero actually engaged in the misconduct with which he was charged, based on evidence relevant to that inquiry, regardless of when the evidence came to light.

■ {22} One source of the parties' difficulty with the standard of review lies in the statute's placement of the phrase, "at the time of the notice of intent to recommend discharge," in a way that suggests the review inquiry must be limited to the evidence available prior to service of the notice. Section 22–10–17.1(D). However, it is more sensible in the context of the statute as a whole to construe "at the time of the notice of intent to recommend discharge" as limiting the evidence and the review to the original charges leveled against the employee. In other words, at a school board or arbitration hearing following a notice of intent to recommend discharge, the school administrators may not introduce evidence of new reasons for dis-

charge that are different from the charges stated in the notice. This ensures that the employee receives due process through adequate notice. *See Bd. of Educ. of Carlsbad v. Harrell,* 118 N.M. 470, 478, 882 P.2d 511, 519 (1994) (stating that, in proceedings to terminate public school employee, due process requires notice of the charges and an opportunity to present evidence controverting the charges).

{23} The Board argues that its view of the arbitrator's role is supported by the 1991 amendments to Section 22–10–17.1, which it claims were in response to our Supreme Court's decision in *Kestenbaum v. Pennzoil Co.,* 108 N.M. 20, 766 P.2d 280 (1988). We disagree. *Kestenbaum* analyzed the grounds for termination in an implied employment contract. Here we are concerned with a written contract whose terms are governed by statute. Consequently, our focus is to interpret the controlling statutes rather than to give guidance to a fact finder attempting to determine implied terms.

{24} In addition, it is apparent that the 1991 amendments were intended to eliminate inconsistencies between termination and discharge proceedings and to clarify the School Personnel Act's appeal procedures. The amendments (1) defined "just cause"; (2) changed the burden of proof and expanded the arbitrator's role in reviewing termination decisions; and (3) with respect to discharge proceedings, gave the employee the right to a hearing following the recommendation for discharge, imposed on the board or governing authority the burden to prove just cause for discharge, and clarified that the arbitrator's review was de novo. *Compare* 1990 N.M. Laws, ch. 90, §§ 1–5, *with* 1991 N.M. Laws, ch. 187, §§ 1–8.

{25} In making these broad changes, the legislature changed the wording of the question to be decided by the arbitrator reviewing a discharge decision, but we do not ascribe to the change the significance argued by the Board. Before the amendments, "[t]he issue to be decided by the independent arbitrator" was "whether the board's decision to discharge ... was based on good and just cause." 1990 N.M. Laws, ch. 90, § 5(D). After the amendments, the issue was wheth-

er, "at the time of the notice of intent to recommend discharge, the local superintendent or administrator had just cause to discharge the certified school employee." 1991 N.M. Laws, ch. 187, § 8(D). As noted previously, the change protects the employee's due process rights: by limiting the grounds for discharge to those known at the time of the notice, the amended statute precludes the administrator or the board from advancing at the arbitration other, more recently identified, reasons for discharge. *See Harrell,* 118 N.M. at 478, 882 P.2d at 519 (stating that Section 22–10–17.1 post-deprivation hearing affords due process by requiring, among other protections, notice of charges against school employee). We see nothing in the amended language suggesting, as the Board asserts, that an administrator's objectively reasonable belief in the existence of just cause can justify the discharge of a certified school employee.

## IV. Standard of Review Employed by Arbitrator

{26} We now turn to the question of whether the arbitrator in this case employed the correct standard in reviewing the Board's discharge of Romero. We conclude that he did not. The arbitrator's written decision does not clearly set forth the standard he used. On the one hand, the arbitrator recited the statutory language and found that "[t]he board failed to prove by preponderance of the evidence that at the time of the notice to recommend discharge, there was just cause to discharge Rodney Romero." On the other hand, the arbitrator's findings reflect a focus on the alleged inadequacy of the investigation conducted by the administrator, Sewing. For example, the arbitrator found that "[t]he administrator ... did not attempt to obtain independent corroboration" of Nicole's accusations and "accepted the student's version without engaging in a reasonable further inquiry." This focus was misplaced, given the statute's contemplation of full-blown de novo review with discovery and the presentation of evidence. Because the arbitrator's findings are ambiguous with respect to the standard employed, we turn to other parts of the record for enlightenment.

*Cf. State v. Bonilla*, 2000–NMSC–037, ¶ 9, 130 N.M. 1, 15 P.3d 491 (noting that trial-court's comments may serve as evidence of court's legal rationale).

{27} At the arbitration hearing, the arbitrator specifically asked the parties' counsel to assist him in understanding the standard of review he was to employ. He said,

> So I can . . . say, "I will make up my own mind or to hell with [the school board]," or am I going to say, "Is there—did they have what they concede as just cause to discharge him, whether or not they're right or wrong or whether it's true or not." That's what I want.
>
> If I can get a little help on that.

In response to this request from the arbitrator, the following colloquy took place:

> [Board's counsel]: [The statute] gives you exactly the same charge that the school board had, and that is to decide whether at the . . . mailing of the notice of intent to discharge . . .
>
> [Arbitrator]: There was just cause.
>
> . . .
>
> [Arbitrator]: Then why do we have evidence now? . . .
>
> . . .
>
> [Arbitrator]: [I]f I'm to determine that they had just cause, I am not substituting my judgment for Ms. Sewing's. This is the information she had and she made an administrative decision, was there cause—reasonable cause in her mind to do what she did, or am I going to say she didn't have—make my own decision that [Romero]'s right and Nicole is wrong?
>
> [Board's counsel]: [W]hether just cause existed is all the guidance you get from the statute.
>
> [Arbitrator]: [O]kay. That's a little different than me looking at this completely new it seems. . . . [I]f I take this completely new, then I'll decide whether he should lose his job or not, which is different than me deciding they had just cause in my mind. There is a difference.
>
> [Board's counsel]: The distinction is not clear to me. . . . I think you are called upon to look at the information that the school board had—administration, excuse me. And the key piece is that Vickie Sewing believed Nicole and she did not believe [Romero].
>
> . . .
>
> [Arbitrator]: I think I see where I am with you two.
>
> . . .
>
> [Romero's counsel]: But you have to look at all the facts that Vickie Sewing had, and certainly in doing that you consider whether or not she's biased in any way, which is pretty clear.

{28} It is apparent that all participants were confused about the standard to be used, but both counsel, and ultimately the arbitrator, seemed to think the arbitrator's focus should be on the administrator and the information available to her, rather than on whether just cause for discharge actually existed. We have demonstrated that this view of the review standard was incorrect. Because the arbitrator based his determination on whether Vickie Sewing's subjective belief in the existence of just cause was objectively reasonable, we reverse and remand this case for a new arbitration. Because of the confusion of all parties at the prior arbitration, on remand, the parties will be permitted to conduct discovery and introduce evidence as provided in Section 22–10–17.1. The arbitrator will then decide whether the Board has established by a preponderance of the evidence that the misconduct charged in the notice of intent to recommend discharge actually occurred.

{29} Because we are reversing the arbitrator's decision, we need not address the Board's argument that the arbitrator's assessment of the witnesses' credibility was not supported by substantial evidence.

## V. Undue Delay and Procedural Errors by the Arbitrator

{30} The arbitrator's undue delay in rendering his decision and in assisting with the processing of this appeal persuades us that the arbitration on remand should be before a different arbitrator. Section 22–10–17.1(K) requires the arbitrator to render a written decision within thirty days of the conclusion of the arbitration. Here, the arbi-

**390**

trator did not issue a decision until twenty months after the arbitration concluded. Over the course of that time the parties were compelled to write to the arbitrator asking for the decision, and twice the Board sought an order from the First Judicial District Court's chief judge requiring the arbitrator to act.

{31} After finally issuing a decision, the arbitrator failed to respond to repeated requests to prepare and submit a record proper for the appeal to this Court. The Board filed a motion to compel the arbitrator to prepare a record proper, but for four months the arbitrator failed to respond. This Court entered an order to show cause, whereupon the arbitrator submitted an envelope of undifferentiated papers which were not in chronological order or paginated.

{32} We are dismayed by the neglect and unprofessional behavior exhibited by the arbitrator, and we are concerned that the arbitrator's delay may have prejudiced one or both parties to this case. Consequently, the arbitration on remand shall be before a new arbitrator selected in accordance with Section 22–10–17.1(C). *Cf.* NMSA 1978, § 44–7A–24(c) (2001) (stating that in arbitrations under the Uniform Arbitration Act, rehearing after vacatur of arbitration award must be before a new arbitrator if vacatur is based on misconduct of the arbitrator that prejudices a party's rights).

**CONCLUSION**

{33} Because the arbitrator used the wrong standard in reviewing the Board's termination of Romero, we reverse the arbitrator's decision. We remand this case for a new hearing with a different arbitrator selected in accordance with Section 22–10–17.1.

{34} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Judge, and CELIA FOY CASTILLO, Judge.