HANISEE, Judge (dissenting). {40} At the heart of this case lie separate arbitral awards, each turning on a single legal question: whether the 2008 Legislature, by its $12.8-million-dollar appropriation bills, intended to specifically fund the State’s 2005 and 2006 collective bargaining Agreements and thereby trigger salary increases for AFSCME/CWA bargaining unit employees over and above those awarded to comparably situated, but unrepresented, classified public employees. Both arbitrators interpreted the Legislature’s stated intention to fund “an average salary increase of two and [nine]tenths percent based on employee job performance as determined by the personnel board” as unambiguously funding the union contracts, and rejected evidence and argument presented to the contrary. By affirming the district court’s confirmation of both awards, the majority ratifies application of the Uniform Arbitration Act’s (UAA’s) built-in standard of review, which is “among the narrowest known to the law,” permitting vacatur of an arbitral award only if tainted by corruption, fraud, misconduct, or the like. Bowen v. Amoco Pipeline Co., 254 F.3d 925, 932, 936 (10th Cir. 2001) (internal quotation marks omitted). Consequently, meaningful judicial review of the arbitrators’ legally determinative fiscal constructions is evaded. See supra, Majority Opinion ¶ 24 (“[W]e are also unable to . . . rule on the merits of the issues arbitrated},] ... [e] ven if the arbitrators committed legal or factual error}.]”). Because I believe that application of the UAA’s standard of review to these arbitral awards contravenes direct precedent, the New Mexico Constitution, PEBA itself, and sound public policy, I respectfully dissent. Standard of Review {41} This Court independently determines the standard of its review. Clayton v. Farmington City Council, 120 N.M. 448, 453, 902 P.2d 1051, 1056 (Ct. App. 1995) (“}0]ne of our first tasks is to determine the standard of review we should apply in examining district court judgments.”). This is true even when the parties have failed to adequately present the issue below, or in this Court. Watson v. Town Council of Bernalillo, 111 N.M. 374, 376, 805 P.2d 641, 643 (Ct. App. 1991); see also State v. Barrera, 2001-NMSC-014, ¶ 20, 130 N.M. 221, 22 P.3d 1177 (“The standard of review on appeal is an issue that is separate and distinct from the requirement of preservation.”). While the majority here precludes application of a standard of review not specifically advanced by the parties, see supra, Majority Opinion ¶¶ 34-37, my view is that our appellate obligation incorporates the identification and use of the standard that is correct as a matter of law. {42} The majority cites the general standard appropriate to our review of a district court’s confirmation of an arbitral award, which requires that factual findings be supported by substantial evidence and that applicable law be correctly utilized in relation to the facts. See Casias, 1999-NMCA-046, ¶ 8. But that “standard of review depends on the nature of the review undertaken by the district court},]” Clayton, 120 N.M. at 453, 902 P.2d at 1056, which here reviewed the arbitral awards only as directed by the UAA. See § 44-7A-3(a) (“The [UAA] governs an agreement to arbitrate made on or after [July 1, 2001].”); see also § 10-7E-17(F) (“[Disputes pertaining to employment terms and conditions and related personnel matters[,] . . . shall constitute an arbitration award . . . [and] be subject to judicial review pursuant to the standard set forth in the [UAA].”). Our New Mexico Supreme Court, however, has plainly required that a broader, administrative standard of review be applied when the parties have been compelled to arbitrate by statute. Harrell, 118 N.M. at 485-86, 882 P.2d at 526-27. {43} Harrell distinguished voluntary arbitration from statutorily mandated arbitration and assigned differing standards of review to each. When arbitration is volitional, a “limited scope of judicial review of arbitration awards is appropriate [because] the parties have voluntarily bargained for the decision of an arbitrator and, presumably, have assumed the risks of and waived objections to that decision.” Id. at 476, 882 P.2d at 517 (emphasis added). The Court explained, however, that “[w]hen arbitration is statutorily mandated as the sole method for resolution of a particular dispute, the arbitration is not consensual even if a provision for such arbitration is incorporated into a contract.” Id.; see also Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 38, 150 N.M. 398, 259 P.3d 803 (“Arbitration is a matter of consent, not coercion}.]” (internal quotation marks and citation omitted)). {44} While the New Mexico Supreme Court ultimately upheld the enforceability of statutorily mandated arbitration in Harrell, it declared unconstitutional the State Personnel Act’s limited standard of review — which is directly analogous to that of the UAA — when applied to the challenged product of compulsory arbitration: [D]ue process, together with separation of powers considerations, requires that parties to statutorily mandated arbitration be offered meaningful review of the arbitrator’s decision. In order for review of the arbitrator’s decision to be meaningful, the court must determine whether the litigant received a fair hearing before an impartial tribunal, whether the decision is supported by substantial evidence, and whether the decision is in accordance with law. [Any] provision . . . limiting judicial review of the arbitrator’s decision to cases “where the decision was procured by corruption, fraud, deception or collusion” does not permit meaningful review of the arbitrator’s decision by the court. We therefore strike thfese] provision^] as a violation of due process and as an unconstitutional delegation of judicial power. 118 N.M. at 485, 882 P.2d at 526. {45} Thus, the appropriate standard of district court review in this case turns on whether the arbitration herein was compulsory or voluntary. There has been one case in our jurisprudence to address this question in the context of PEBA, but for reasons explained below its result is distinguishable. See generally Int’l Ass’n of Firefighters v. City of Carlsbad, 2009-NMCA-097, ¶ 18, 147 N.M. 6, 216 P.3d 256. In Int’l Ass’n of Firefighters, this Court reasoned that the final arbitration provided for in Section 10-7E-18(B) of PEBA was voluntary, rather than compulsory, because the parties could have agreed to an alternative impasse procedure under Section 10-7E-18(C), and because the arbitrator’s election to adopt the “complete, last, best offer” was contingent on the future discretion of the City in exercising its independent power to appropriate funds. 2009-NMCA-097, ¶¶ 7, 13, 18 (internal quotation marks and citation omitted). {46} The provision of PEBA applicable to this case is very different from that analyzed in Int’l Ass’n of Firefighters. First, the grievance procedures contained within the 2005 and 2006 Agreements and invoked by the Unions were adopted pursuant to Section 10-7E-17(F), which mandated binding arbitration for resolution of disputes arising under the Agreements: An agreement shall include a grievance procedure to be used for the settlement of disputes pertaining to employment terms and conditions and related personnel matters. The grievance procedure shall provide for a final and binding determination. The final determination shall constitute an arbitration award within the meaning of the [UAA] .... (Emphasis added.) {47} Also, Section 10-7E-17 lacks a comparable opt-out provision such as that present in Int’l Ass’n of Firefighters, which would have allowed the parties to agree to a grievance procedure other than binding arbitration.' And while the Agreements at issue are similarly “contingent upon the specific appropriation of funds by the [LJegislature and the availability of funds [,]” the arbitrators’ decisions herein occurred as a product of past-funded legislative appropriations. Section 10-7E-17(E). In contrast, the City in Int’l Ass’n of Firefighters possessed the independent power to fund the terms adopted by that arbitrator’s decision at some point in the future if it so chose. 2009-NMCA-097, ¶¶ 3, 12. {48} Given these distinctions, it is my view that the mandatory arbitration clause provided in Section 10-7E-17(F) and exported into these Agreements, is compulsory under Harrell. The terms of the Agreements requiring binding arbitration were nonnegotiable.[1] Thus, UAA review of these awards ran structurally afoul of our Supreme Court’s careful effort to limit cursory judicial review following involuntary resolution of disputes by an arbitrator. Applying Harrell, I would declare the clause within PEBA’s Section 10-7E-17(F) that limits “judicial review pursuant to the standard set forth in the Uniform Arbitration Act” to be unconstitutional. {49} Importantly, the applicability of our New Mexico Supreme Court’s analysis goes beyond the simple determination of whether submission to an arbitrator’s authority is a product of force or choice. Harrell based its ultimate determination on separation of powers grounds in addition to due process, further rooting its decision within the New Mexico Constitution. See 118 N.M. at 482, 882 P.2d at 523; N.M. Const. Art. III, § 1 (“The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted.”). Our Supreme Court stressed the critical role of the judiciary as a separate and independentpower, vital to the proper operation of government: The judiciary thus must maintain the power of check over the exercise of judicial functions by quasi-judicial tribunals in order that those adjudications will not violate our constitution. The principle of check requires that the essential attributes of judicial power, vis-a-vis other governmental branches and agencies, remain in the courts. Harrell, 118 N.M. at 484, 882 P.2d at 525. Seperately, our Supreme Court has upheld the Legislature’s constitutional role in assigning the location at which the funds it chooses to disburse come to rest. State ex rel. Schwartz v. Johnson, 120 N.M. 820, 825, 907 P.2d 1001, 1006 (1995) (“The [Legislature must exercise its ‘exclusive power of deciding how, when, and for what purpose the public funds shall be applied in carrying on the government.’” (citation omitted)). {50} In my view, the arbitrators’ interpretations of the Legislature’s intent to discharge its independent appropriative function ascend to a level of constitutional significance. Each award is therefore subject to the judiciary’s power of check, and not the virtual rubberstamp of UAA review. Pursuant to Harrell, that check is provided by way of an administrative agency standard of review. See 118 N.M. at 485-86, 882 P.2d at 526-27 (“The scope of review constitutionally required for compulsory arbitration is the review required for administrative adjudications},]” which entails “a determination whether the administrative decision is arbitrary, unlawful, unreasonable, capricious, or not based on substantial evidence.”). Because the district court did not employ the appropriate standard of review to these arbitral awards, I would remand for it to do so. PEBA Limits Arbitrator Power {51} Further undermining the exclusive application of UAA-derived review to the question of law at issue is PEBA itself, which expressly limits arbitrator authority to matters of contractual interpretation within the four corners of a given collective bargaining agreement. Section 10-7E-17(F) (limiting grievance arbitration to “the settlement of disputes pertaining to employment terms and conditions and related personnel matters.” (emphasis added)); cf. Agreement Between The State of New Mexico and State Employee Alliance The Communications Workers of America AFL-CIO, CLC, art. 9, §§ 1(A), 5 (Feb. 1, 2006) (“Allegations of violation, misapplication, or misinterpretation of this Agreement . . . shall be subject to this negotiated grievance procedure[,]” and “[t]he arbitrator shall have no power to add to, subtract from, alter, or modify any of the terms of the Agreement, but may give appropriate interpretation or application to such terms and provide appropriate relief.” (emphasis added)). Thus, PEBA too supports the diminution of an arbitrator’s might to questions of law that are answerable only beyond the confines of collective bargaining agreements. {52} To implement this distinction, PEBA defines two tracks for resolution of disputes arising between the State and bargaining units: (1) administrative agency proceedings before the Public Employee Labor Relations Board (the Board) and (2) binding arbitration. Board rulings are subject to a typical administrative agency standard of review, reversible only when found to be “(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence on the record considered as a whole; or (3) otherwise not in accordance withlaw.” Section 10-7E-23. The contrasting standard of review for arbitral awards is the far narrower UAA provision within Section 44-7A-24(a): vacatable only for “fraud, partiality, misconduct, excess of powers, or technical problems in the execution of the award.”[2] Fernandez, 115 N.M. at 625, 857 P.2d at 25. Like the dichotomy in Harrell that separates these same standards of review based upon voluntariness or compulsion, PEBA differentiates between disputes that are intrinsic to or extrinsic from the Agreement at issue. {53} The limitation of an arbitrator’s reach is expressed by the referral of intrinsic disputes for arbitration, while legally broader extrinsic matters are resolved by the Board PEBA created. See §§ 10-7E-8, -9 (providing that Board powers and duties include “the filing of, hearing on and determination of complaints of prohibited practices”). Prohibited practices complaints are defined at Section 10-7E-19, and include complaints relating to the failure “to comply with a collective bargaining agreement.” Section 10-7E-19(H). Additionally, PEBA directs that, “[t]he board shall promulgate rules necessary to accomplish and perform its functions and duties.” Section 10-7E-9(A). One of the regulations promulgated by the Board expresses the same effort to define an arbitrator’s power in a manner that expresses its outer boundaries: If the subject matter of a prohibited practices complaint requires the interpretation of a collective bargaining agreement, and the parties waive in writing any objections to timeliness or other procedural impediments to the processing of a grievance, and the director determines that the resolution of the contractual dispute likely will resolve the issues raised in the prohibited practices complaint, then the director may, on the motion of any party, defer further processing of the complaint until the grievance procedure has been exhausted and an arbitrator’s award has been issued. 11.21.3.22(A)NMAC (02/28/2005) (emphasis added)[3]; accord S. Barry Paisner & Michelle R. Haubert-Barela, Correcting the Imbalance: Th e New Mexico Public Employee Bargaining Act and the Statutory Right Provided to Public Employees, 37 N.M. L. Rev. 357, 373 (2007) (noting that under the Civil Service Reform Act a more rigorous review process applies to unfair labor practices, whereas an arbitrator’s “interpretation of the collective bargaining agreement . . . remains largely unreviewable”). {54} The proper confinement of an arbitrator’s power to the contracts which create it also enjoys broad historical support. The United States Supreme Court, for instance, has recognized that: [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement. . . . Thus the arbitrator has authority to resolve only questions of contractual rights .... [T]he specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land. . . . [T]he resolution of statutory or constitutional issues is a primary responsibility of courts . . . .” Alexander v. Gardner-Denver Co., 415 U.S. 36, 53-57 (1974) (first alteration in original) (internal quotation marks and citations omitted). Thus, pursuant to the language contained within the Agreements and PEBA itself, judicial review is required as to whether these arbitrators erred as a matter of law, and not simply whether they exceeded their powers or were corrupt. Public Policy {55} Lastly, under the UAA the decision of an arbitrator cannot be vacated for legal error or contravention of public policy. See Fernandez, 115 N.M. at 627-28, 857 P.2d at 27-28 (noting that arbitral awards are not reviewable for legal error); see also K.R. Swerdfeger Constr., 2006-NMCA-117, ¶ 19 (“[We are] not convinced . . . that anything in the UAA permits a court to vacate an arbitration award on public policy grounds.”). Accordingly, today’s Opinion also leaves unanswered the question of whether the discrepant entitlement of select classified employees to participate in non-commensurate wage increases comports with New Mexico public policy. {56} Pursuant to the Agreements, employees within the represented bargaining units were each entitled to claim both a two percent general salary increase, as well as a within-band increase of a compa-ratiodetermined amount between one percent and three and one-half percent, each contingent upon funding. When added together, these increases meant that a represented employee’s combined anticipated raise ranged from three percent to five and one-half percent. Unrepresented employees within parallel occupational classifications, but who were not included within AFSCME or CWA’s bargaining units, stood to gain no increase pursuant to the Agreements. See contra §10-7E-2 (“The purpose of [PEBA] is to . . . promote harmonious and cooperative relationships between public employers and public employees and to protect the public interest----”). Today’s ruling affirms that the State is bound by its 2005 and 2006 Agreements, thereby setting aside the State’s effectuation of the 2008 legislative appropriations to provide a two and nine-tenths percent, across-the-board salary increase for all eligible state employees — union represented or not. {57} It appears to me to be contrary to public policy for eligible state employees to be awarded substantially differing income increases for the performance of parallel public services, when that determination is based upon union representation and not upon merit. See State v. Pub. Safety Emps. Ass’n, 798 P.2d 1281, 1286 (Alaska 1990) (“[T]he merit system and the principle of like pay for like work are fundamental to public employment.”). The result this Court reaches today prevents us from discharging our constitutional duty to determine whether the inequitable impact of the Agreements comports with the even-handedness with which New Mexico citizens expect state government to treat and compensate public employees who perform state business on a day-to-day basis. See Hartford Ins. Co. v. Cline, 2006-NMSC-033, ¶ 8, 140 N.M. 16, 139 P.3d 176(“The predominant vo ice b ehind the declaration of public policy of the state must come from the [Legislature, with an additional supporting role played by the courts and the executive department... .”). Had the district court applied the administrative standard of review required by Harrell and established within PEBA, this would not be the case. {58} Because I cannot agree with the manner in which the majority resolves the issues in this appeal, I respectfully dissent. J. MILES HANISEE, Judge The State was separately compelled from the outset — again, by PEBA — to negotiate and reach agreements with the participatory bargaining units. See § 10-7E-17(A) (mandating that the State “shall bargain in good faith . . . [and] shall enter into written collective bargaining agreements covering employment relations”). Arguably, even under UAA review, these arbitral awards require vacatur because they are products of the extrinsic interpretation of legislative appropriation, an area of inquiry that exceeds an arbitrator’s power pursuant to PEBA. The majority, however, does not address that question based upon its conclusion that the State failed to preserve the argument with a requisite level of specificity. See supra, Majority Opinion ¶ 23. Also arguably, the nature of the Union’s grievance — which began as a prohibited practices complaint charging that the State failed to comply with the Agreements — was unsuited for deferral to arbitration and instead required resolution by the Board.